■    In the Matter of LARRY ROLLA, Respondent, v WILLIAM C. BARRY et al., Appellants.—Appeal from a judgment of the Supreme Court at Special Term, entered September 5, 1978 in Sullivan County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, seeking to annul an order of the New York State Racing and Wagering Board suspending petitioner's harness racing license for 15 days. Petitioner commenced this CPLR article 78 proceeding to annul the New York State Racing and Wagering Board's (Board) determination that pursuant to 9 NYCRR 4117.4 (n), petitioner's harness racing license should be suspended for 15 days for racing in a "manner inconsistent with an attempt to win". Special Term concluded that the determination was arbitrary, capricious and an abuse of discretion because it was without foundation in fact. On April 2, 1978 petitioner drove the horse "Some Network" in the sixth race at Monticello Raceway and won by five lengths. The race was a "C-1/C-2 handicap trot" and "Some Network", the No. 2 horse, was driven "up front" by petitioner to a 2:07:1 "wire-to-wire win". On April 5, 1978 "Some Network", again driven by petitioner, raced from the No. 5 post position in a come from behind fashion to a 2:11 third place finish in the sixth race at Monticello. By a notice of suspension dated April 6, 1978, petitioner was notified by William Dunson, presiding judge-steward at Monticello, that he was suspended from driving in races for 15 days for violating 9 NYCRR 4117.4 (n). The notice stated that "While driving #5 (Some Network) in the 6th race the drive was inconsistent with the drive of the same horse in the 6th race of April 2nd, 1978 resulting in an obvious reversal of form." Petitioner appealed his suspension and was granted a hearing before the New York State Racing and Wagering Board. The hearing officer in his report concluded that the decision of the judges at Monticello Raceway was a correct exercise of their judgment. The Racing and Wagering Board in its findings and order concluded that there was no justification for petitioner to have changed from driving "Some Network" up-front to a drive from behind as he did on April 5, 1978. The Board further stated that the change in driving strategy on April 5, 1978 was not expected by the wagering public and it, therefore, confirmed petitioner's suspension. The dispositive issue raised by this appeal is whether the Board's determination was supported by substantial evidence and, more specifically, whether there was a rational basis for the finding that petitioner was unjustified in changing his driving tactics. It is well settled that an administrative determination supported by a rational basis must be confirmed by the courts, who may not substitute their judgment for that of an agency, unless the decision under review is arbitrary, capricious and constitutes an abuse of discretion *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 231-232). In reviewing administrative decisions, however, courts exercise a "genuine judicial function" and do not confirm a determination "simply because it was made by such an agency" *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181). At the hearing of this matter, the presiding judge-steward at Monticello Raceway testified that he, along with two other judges, observed both the April 2 and April 5 races, and, after reviewing both races on video tape, concluded that "there was a discrepancy, quite a change in performance, and we felt the public didn't get a fair shake". He reasoned that the time

when a driver should change tactics is when his horse is moved up in class where the competition is greater, but not when the horse is the short priced favorite against the same class of horse. He felt that the most important factor regarding petitioner's culpability was the fact that "he didn't leave with the horse, didn't show the same kind of race that he did for us on the 2nd, as he went to the top and just continued motoring, and we felt as though this horse was capable of the same kind of performance three days later on the 5th, and that this was not the case. And there, we felt as though that the horse could just motor by the field, after what he demonstrated on the 2nd." He stated that "by not leaving with the horse" during the April 5 race, petitioner lost the opportunity to give the public, who had based their wagering on the April 2 performance, a "fair shake". He finally stated that the track and weather conditions during both meets were substantially the same. As noted, the Board concluded that petitioner's change in driving tactics was unjustified. The record, however, reveals that a change in driving tactics was justified. Petitioner explained that "Some Network" had a "very bad reputation" and was essentially "a wild horse" on the evening of April 2; consequently, he was forced to let the horse run "wherever he wanted". The horse ran fast during the first half mile, but "tired very badly" after the last turn, finishing the last quarter in the "extremely slow" time of "thirty-four and change". In the uncontradicted opinion of petitioner, the horse came out of the April 2 race physically exhausted: the horse "just tore himself up"; he was "wiped out"; he was a "nervous wreck"; and he "choked, he choked three times warming up". Accordingly, petitioner explained that the owner and trainer determined that "Some Network" would be more effective racing from behind than upfront; indeed, in petitioner's view, he "didn't think that this horse could ever win another race racing in front". Consequently, equipment changes made before the April 5 race in an effort to calm the horse and make him manageable, were ordered by the trainer, who expressly instructed petitioner to race the horse in a come from behind fashion. Petitioner noted that on April 5 the horse ran a faster last half mile than on April 2; and on April 12, when rested, won a race employing this come from behind style. Petitioner finally testified that the instructions he received from the trainer of "Some Network" were the "right thing to do". The Board produced no evidence indicating that "Some Network" was not an unpredictable animal, or that it was not tired after the April 2 race. Rather, the presiding judge dismissed this factor by noting that some horses go two dashes the same afternoon and, therefore, it should not be a consideration. In view of petitioner's uncontradicted testimony, we agree with Special Term's conclusion that the record does not contain a rational basis for the finding that a change in driving tactics was unjustified and, that it cannot be said that the horse was driven in the second race "in a manner inconsistent with an attempt to win". Since the Board's action was without foundation in fact, Special Term properly annulled its determination (*Matter of Pell v Board of Educ., supra*, p 231). Judgment affirmed, without costs. Mahoney, P. J., Greenblott, Kane, Main and Mikoll, JJ., concur.