In the Matter of MICHAEL BOKMAN et al., Respondents, v NEW YORK STATE RACING AND WAGERING BOARD, Appellant.

Fourth Department, December 12, 1980

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (William J. Goldman* and *William J. Kogan* of counsel), for appellant.
*Robert C. Napier* for respondents.

### OPINION OF THE COURT

WITMER, J.

In this CPLR article 78 proceeding the facts are undisputed and the only question presented is whether re-

spondent the New York State Racing and Wagering Board (the Board) improperly construed one of its regulations (9 NYCRR 4024.2 [a]) and thereby acted arbitrarily and capriciously and with an abuse of its discretion in determining that a horse, "Saba's Jet", which was illegally raced as a "ringer" in the State of Massachusetts in lieu of another horse, is forever barred from racing in the State of New York, even by petitioners who bought the horse without knowledge of such illegal action. Special Term granted judgment vacating such determination. The judgment should be affirmed.

For the protection of the public it is the practice that the registration number of a horse intended to be raced have its regulation number tattooed on the inside of its upper lip; and before and after each race in which the horse participates that number on the horse is read and recorded. In 1978 one Combee owned a racehorse named "Prince Sappir" which had registration number 7316835, and also a racehorse named "Saba's Jet" having registration number 737177. It was ascertained in May, 1978 at Suffolk Downs Race Track in East Boston, Massachusetts that "Saba's Jet" had run in a race in the place and under the name of "Prince Sappir"; and that information was sent out to other racetracks, including those in New York State.

On September 1, 1978 Saba's Jet was entered in a "claiming race" (see 9 NYCRR Part 4038) at Finger Lakes Race Track in Ontario County, New York, and petitioner Michael Bokman successfully claimed it for the price of $3,500 plus sales tax. He took it to his farm to rest and for retraining in 1979. Petitioner entered Saba's Jet in a race at the Finger Lakes Race Track to be run on May 28, 1979. On the day of that race, before the race, petitioner was notified by the stewards at that track that they had ascertained that "Saba's Jet" had run as a "ringer" and so was disqualified from running that day and, moreover, under the State regulations was forever disqualified from running at that track or at any other New York track.

Petitioners appealed that decision and requested a hearing, which was held. The above facts were shown, and it was established that petitioner bought the horse at the

claiming race without knowledge of its record of illegal racing and that petitioners were the victims of Combee's fraudulent sale of the horse.

New York State "has an important interest in assuring the integrity of the racing carried on under its auspices" *(Barry v Barchi,* 443 US 55, 64; see *Matter of Tappis v New York State Racing & Wagering Bd., Harness Racing Div.,* 36 NY2d 862, 864; *Gilmour v New York State Racing & Wagering Bd.,* 405 F Supp 458, 460). The New York State Racing and Wagering Board has been granted general jurisdiction over all horseracing activities in the State (L 1973, ch 346, § 3 as amd by L 1976, ch 92, § 7), and has power to supervise the running of horseraces and to prescribe rules and regulations for the effective control thereof and to prevent improper conduct tending to affect the reasonably expectable results of such races (L 1973, ch 174, § 1). Pursuant to such authority the Board adopted the following regulation: "No horse shall be allowed to enter or start if the horse was knowingly entered under a name other than its own by a person having lawful custody or control of the animal at the time it was so entered" (9 NYCRR 4024.2 [a]). The legality of such regulation is not questioned on this appeal; but it is contended that the Board has improperly construed it to achieve an arbitrary and unreasonable result.

We start consideration of this issue with the recognition that the construction by the Board of the above statutes and the regulations established thereunder must be accepted by the courts "if [such construction is] not irrational or unreasonable", and the Board's determination must be upheld by the courts " 'if it has "warrant in the record" and a reasonable basis in law' " *(Matter of Howard v Wyman,* 28 NY2d 434, 438, quoting *Board v Hearst Pub.,* 322 US 111, 131; see *Matter of Lezette v Board of Educ.,* 35 NY2d 272, 281).

In support of its determination herein the Board has cited only one case, to wit, *Morgan v New York Racing Assn.* (72 AD2d 740). In that case, however, the court rejected the petition to vacate the disqualification of a "ringer" horse, not on the ground of regulation 9 NYCRR

4024.2 (a), but because the horse was not duly registered under regulation 9 NYCRR 4024.1 (a) and petitioner had not exhausted his administrative remedies.

In general, the Board's regulations are designed to disqualify a horse from a particular race and not for all futurity. Under the regulations a horse may not start in a race unless it is duly registered with The Jockey Club (9 NYCRR 4024.1, [a]-[d]) ; a horse which is owned or under the care or control of a person who is unlicensed, disqualified or ineligible to participate, is not qualified to run (9 NYCRR 4025.4) ; a horse which has been the subject of improper practice may be disqualified for such time as the stewards shall determine (9 NYCRR 4025.5) ; and a horse may be disqualified if its jockey fails to comply with weight requirements (9 NYCRR 4036.3), or if a foul is committed during a race (9 NYCRR 4035.2), or if a drug which would affect its racing condition was administered to the horse before the race (9 NYCRR 4042.2). In none of these situations does the regulation provide that the horse shall be permanently barred from racing, but it is only disqualified during the limited period of disability. As the court recognized in *Morgan (supra)*, the horse would be qualified to run once the disability ceased. Indeed, the horse is innocent—it is a piece of property as is an automobile.

The regulations should be reasonably designed and construed to protect the public and punish an offender. Where there is no showing of the need of a policy for the destruction, in effect, of property found to have been illegally used, the regulation should not be construed to require it; and this regulation should not be construed to require that the horse be barred from racing after it has come into the hands of an innocent purchaser. Other means may be found to deter an original offense and to punish an original offender (see, e.g., L 1926, ch 440, § 12-a, as added by L 1965, ch 1031, § 194; 9 NYCRR 4042.1, 4042.4).

That it was not the intent of the Legislature permanently to ban a horse from racing is evinced by 9 NYCRR 4042.4 (c), which provides: *"Horses suspended.* All horses in the charge of a trainer whose license has been revoked or has been suspended, whether temporarily for investiga-

tion or otherwise, shall be automatically suspended from racing during the period of the trainer's exclusion or suspension. *Permission may be given by the stewards for the transfer of such horses to another trainer during such period, and upon such approval such horses shall again be eligible to race"* (emphasis added). Thus, it was contemplated that the disqualification of a horse may be removed, after which it may again be entered to race.

Upon the undisputed evidence in this case, petitioners were innocent of any illegality in connection with Saba's Jet; and such illegality may not reasonably be found to bar petitioner from entering it to race. We conclude, therefore, that respondent's determination to bar forever Saba's Jet from racing in New York was arbitrary and capricious and an abuse of discretion, and that the judgment vacating it should be affirmed.

SIMONS, J. P., SCHNEPP, CALLAHAN and DOERR, JJ., concur.

Judgment unanimously affirmed, with costs.