OPINION OF THE COURT
Hancock, Jr., J.
The "trainer responsibility rule” (9 NYCRR 4043.4) makes *592 the trainer of a thoroughbred race horse liable for the impermissible presence of a restricted substance in the horse’s system unless the trainer can show by substantial evidence that he was, in fact, neither personally nor vicariously responsible. The question presented on this appeal is whether the imposition of this "strict responsibility” rule violates due process of law under either the Federal or State Constitution.
 After an administrative hearing, respondent, the New York State Racing and Wagering Board, determined that petitioner, a trainer of thoroughbred race horses, was responsible for the presence of a restricted substance in the system of a horse which had been under his care prior to the start of a race. It suspended his trainer’s license for 60 days. The Appellate Division, upon transfer from Supreme Court, confirmed respondent’s determination, without opinion. On petitioner’s appeal to this court on constitutional grounds, we affirm for reasons that follow.
I
"Truly Double”, a horse trained by petitioner, competed in a "claiming race” at Aqueduct Race Track on January 9, 1984.[1] Truly Double was not a winner but, because he was claimed, was tested for drugs after the race. The analyses of two urine samples revealed the presence of procaine, a local anesthetic and, in large doses, a central nervous system stimulant, which, by Board regulations, is specifically prohibited from use for seven days before a race as a protection to injured horses (9 NYCRR 4043.2 [e]). On February 2, 1984, the Board notified petitioner that his license was being suspended for 60 days, the suspension to be stayed pending a hearing to be conducted on March 7 and 8, 1985.
At that hearing, the Board’s inspector at Aqueduct Race Track testified that he collected two urine samples from Truly Double and that he had been with the horse at all times from its unsaddling by the trainer’s groom to the completion of the tests. Technicians at the Belmont Race Track field laboratory *593 and at the main equine drug testing laboratory at Cornell University testified that the samples, which were tested at both laboratories, revealed the presence of procaine. Additionally, there was expert testimony that procaine can only be detected in a horse’s system for five days, even if administered in very large doses.
By way of defense, both petitioner and his groom took the stand. Petitioner’s groom testified that he had charge of Truly Double for two weeks prior to the race and had not injected the horse with any substance. Because he tended to other horses as well, however, he did not maintain a constant watch over Truly Double and, in fact, was absent during certain veterinary treatments. Moreover, he acknowledged that others had contact with the horse prior to posttime on the day of the race. Petitioner testified that he had not personally drugged Truly Double or permitted anyone else to do so. He admitted, however, that either he or his groom had had custody of the horse at all relevant times prior to the race, that he was uncertain of the various medications the horse received during the preceding week, and that, inasmuch as he had other separately stabled horses being watched by the groom at the same time, he had not maintained a constant 24-hour guard on Truly Double.
The Hearing Officer found that the drug could not have been administered to Truly Double after the race and that petitioner, as the horse’s trainer prior to the race, had responsibility for its care, custody and control at all relevant times. The Hearing Officer concluded, therefore, that petitioner should be held accountable under the trainer responsibility rule, and he recommenced that petitioner’s license be suspended for a period of 60 days. On August 13, 1985, respondent Board approved the findings and recommendation of the Hearing Officer. Petitioner then instituted this article 78 proceeding and, on consent of the Board, a stay of his license suspension was granted.
There is no dispute that petitioner has a property interest in his license of which he cannot be deprived without due process of law (see, Barry v Barchi, 443 US 55, 64; Bell v Burson, 402 US 535, 539). Nor is there any question that the administrative hearing and determination were procedurally adequate: petitioner was represented by counsel, he had the opportunity to present testimony and other evidence on his behalf and to cross-examine adverse witnesses, and there was *594 no prehearing suspension of his license — indeed, the suspension was stayed not only pending the Board’s determination but, thereafter, pending the outcome of this appeal as well (see, Mathews v Eldridge, 424 US 319, 333; Armstrong v Manzo, 380 US 545, 552; cf., Barry v Barchi, supra, at 66). Petitioner’s only contentions are that the trainer responsibility rule violates due process and that respondent’s determination is not supported by evidence in the record.
II
The "trainer responsibility rule” (9 NYCRR 4043.4) provides: "A trainer shall be responsible at all times for the condition of all horses trained by him. No trainer shall start or permit a horse in his custody, care or control to be started if he knows, or he might have known or have cause to believe, that the horse has received any drug or other restricted substance that could result in a positive test. The trainer shall be held responsible for any positive test unless he can show by substantial evidence that neither he nor any employee nor agent was responsible for the administration of the drug or other restricted substance. Every trainer must guard each horse trained by him in such manner and for such period of time prior to racing the horse so as to prevent any person, whether or not employed by or connected with the owner or trainer, from administering any drug or other restricted substance to such horse contrary to this Part” (emphasis added).
The rule places strict responsibility upon the trainer to ensure that a horse in his care and custody does not receive any drug or other restricted substance within certain specified periods of time prior to a race.[2] If a horse under the trainer’s care and custody tests positive for the impermissible presence of a drug, the trainer is deemed "responsible” and subject to penalty, including suspension of his license (9 NYCRR 4002.9 [a]). The trainer may be relieved of this responsibility only if he presents "substantial evidence” showing that neither he nor any of his employees or agents was in any way culpable. *595 In sum, the rule obligates the trainer to ensure that his horse is drug-free prior to a race. In effect, it creates a presumption that the trainer has failed in this duty whenever his horse tests positive, but permits the trainer to rebut that presumption by coming forward with substantial evidence to the contrary (see, Wetzel v New York State Racing & Wagering Bd., 109 AD2d 1099). The validity of this rule depends upon whether the presumption it creates is rational, whether the burden thus placed on trainers is justified by legitimate State interests, and whether this imposition of strict responsibility is reasonably well calculated to promote those interests.
It has long been the rule, both State and Federal, that a rebuttable presumption involving the imposition of civil penalties, such as the one at issue here, is valid if there is a rational connection between the facts proven and the fact presumed, and there is a fair opportunity for the opposing party to make his defense (Board of Commrs. v Merchant, 103 NY 143, 148 [Earl, J.]; see also, Matter of Sigety v Leventhal, 42 NY2d 953, 955; Usery v Turner Elkhorn Min. Co., 428 US 1, 28; Tot v United States, 319 US 463, 467-468; see generally, McCormick, Evidence § 345 [3d ed]). The presumption contained in the trainer’s responsibility rule meets this test. The facts proven, (1) that petitioner was the horse’s prerace trainer and (2) that the horse was given a restricted drug within the proscribed time period prior to the race, are connected logically to the ultimate fact presumed: that petitioner is responsible. The connection upon which the presumption stands, and from which the inference of responsibility may fairly be drawn, is the obligation of the trainer, imposed by operation of the rules under which he is licensed, to oversee the condition of his horse at all times and to guard the horse, as necessary, to prevent the impermissible administering of any drug or other restricted substance for the required period prior to the race (see, Barchi v Sarafan, 436 F Supp 775, 784 [SD NY], mod on other grounds sub nom. Barry v Barchi, supra; cf., Cooney v American Horse Shows Assn., 495 F Supp 424, 431-432).
The burden imposed by this presumption upon the trainer’s private interest in his license is justified by the State interests sought to be protected by the trainer responsibility rule. Without question, this State has an important interest in assuring the fairness and integrity of horse racing, especially since horse racing is carried out under State auspices and is the only sport in which wagering is officially sanctioned. The *596 State also has a significant interest in protecting competitors from participation in tainted horse races and safeguarding the wagering public from fraud. Additionally, the State has an interest in protecting horses from the dangers of racing under the effects of analgesics or stimulants (see, Matter of Tappis v New York State Racing & Wagering Bd., 36 NY2d 862, 864; Barry v Barchi, supra, at 64; cf., Hubel v West Va. Racing Commn., 513 F2d 240, 243-244 [4th Cir]; Sandstrom v California Horse Racing Bd., 31 Cal 2d 401, 189 P2d 17, 21, cert denied 335 US 814). These interests justify placing a high standard of responsibility on the trainer, the one individual who, by virtue of his care and control of a horse, is best able to prevent the administering of a restricted drug or other substance to the horse, or to know who has done so.
Moreover, the trainer responsibility rule is a practical and effective means of promoting these State interests — both in deterring violations and in enforcing sanctions. The imposition of strict responsibility compels trainers to exercise a high degree of vigilance in guarding their horses and to report any illicit use of drugs, medications or other restricted substances by other individuals having access to their horses. Additionally, the rebuttable presumption of responsibility facilitates the very difficult enforcement of the restrictions on the use of drugs and other substances in horse racing. Indeed, it would be virtually impossible to regulate the administering of drugs to race horses if the trainers, the individuals primarily responsible for the care and condition of their horses, could not be held accountable for the illicit drugging of their horses or for the failure either to safeguard their horses against such drugging or to identify the person actually at fault. It is not surprising, therefore, that trainer responsibility rules have been upheld, almost without exception, in other jurisdictions. This has been so where the rule at issue contained a rebut-table presumption such as that in this State (see, e.g., Harbour v Colorado State Racing Commn., 32 Col App 1, 505 P2d 22; see, discussion in Cooney v American Horse Shows Assn., supra), and even where the presumption was irrebuttable and the rule thus imposed "absolute responsibility” (see, e.g., Sandstrom v California Horse Racing Bd., supra; Division of PariMutuel Wagering v Caple, 362 So 2d 1350 [Fla]; O’Daniel v Ohio State Racing Commn., 37 Ohio St 2d 87, 307 NE2d 529; Hubel v West Va. Racing Commn., supra; but see, Brennan v Illinois Racing Bd., 42 Ill 2d 352, 247 NE2d 881).
The stringent standard of responsibility imposed by this *597 State’s trainer responsibility rule, with its provision for the opportunity of the trainer to rebut his culpability, strikes a fair balance between the harshness of an absolute liability rule, on the one hand, and the considerable difficulty of proving the trainer’s personal culpability, on the other. As a measure reasonably calculated to protect the public and competitors from tainted horse racing, and the horses from injury, while at the same time avoiding the considerably more onerous burden of absolute responsibility on the trainer, the rule satisfies the requirements of due process of law under both the Federal and State Constitutions.
Finally, a review of the record shows that respondent’s determination was supported by substantial evidence. The inspector testified that he was with Truly Double from the time it was unsaddled by the groom until he collected the samples, thereby dispelling any question of whether the drug was administered to the horse after the race or whether anyone tampered with the samples. Moreover, there was expert testimony that the drug must have been administered within the five-day prerace period. Additionally, it cannot be said that petitioner offered substantial evidence to rebut his strict responsibility for the positive results of the drug tests. Neither petitioner nor his groom could explain the presence of the drug in Truly Double’s system, identify the medications given the horse during the week preceding the race, or certify that the horse was actually under constant watch during that period.
Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Judgment affirmed, with costs.

. A claiming race is one in which bids may be submitted by parties interested in purchasing a horse at an established price up to 10 minutes before posttime. The bidder or claimant, or whoever is chosen by lottery where there is more than one, becomes the owner of the horse once the race has started. Further, a postrace drug test is performed after a claiming race and the claimant has the option to void his purchase if the test proves positive. (See, 9 NYCRR 4038.1, 4038.7, 4038.16, 4038.18.)

. The different periods of time for particular drugs, medications and other substances are specified in 9 NYCRR 4043.2. That section provides, in part:
"Drugs and medications are permitted to be used only in accordance with the following provisions * * *
"(e) No other drugs or medications (including procaine) may be administered by any means within one week of the start of a racing program.”