In the Matter of REJEAN DAIGNEAULT, Petitioner, v RICHARD CORBISIERO, as Chairman of the New York State Racing and Wagering Board, Division of Harness Racing, et al., Respondents.

First Department, January 23, 1990

APPEARANCES OF COUNSEL

*Joseph A. Faraldo* for petitioner.

*Melissa Saren* of counsel *(Robert Abrams, Attorney-General,* attorney), for respondents.

### OPINION OF THE COURT

CARRO, J.

This CPLR article 78 proceeding, transferred to this court, was brought to review a determination of respondents New York State Racing and Wagering Board, its Chairman and members. Petitioner was the driver of Cherokee Express, a horse that competed in, and won, by some three lengths, the eleventh race at Roosevelt Raceway on August 5, 1987. On August 7, 1987, the Division of Harness Racing of the New York State Racing and Wagering Board (Racing Board) notified petitioner, by notice of suspension, revocation and or fine, that his harness racing license was suspended for eight days[1] for "excessively slow[ing] the field during the 2nd quarter" of the race. The notice of suspension invoked the rule contained in 9 NYCRR 4117.4 (m) which states that "[c]ausing any horse or a field of horses to excessively slow down" shall be deemed a racing infraction.

A hearing upon the charges was held on January 15, 1988. Arthur Gray, one of the judges who officiated at the race, testified on behalf of the Racing Board; he stated that the three judges who observed the harness race unanimously determined that petitioner, who had control of the field during the race, drove excessively slowly during the second quarter of the race. He contended that this forced the horses behind Cherokee Express to proceed at a slower pace than they would otherwise have run. However, after estimating the competitive racing time for the class of horse in which Cherokee Express was categorized, Gray acknowledged that Cherokee Express was within the parameters of competitive time during each quarter of the subject race. He further conceded that Cherokee Express ran "a competitive race * * * a race to win."

Petitioner testified in his own behalf. He stated that he has driven in approximately 2,000 races with 300 wins. His testimony regarding the subject race was that he raced Cherokee

---

1. Petitioner's suspension has been stayed pending the outcome of these proceedings. Cherokee Express was not disqualified from the race and individuals who placed bets on the horse were duly paid.

Express, who was number four, from "wire to wire", i.e., he left the gate, went to the front and inner rail of the track and remained there for the duration of the race. He asserted that he never looked back during the race to see who was or was not behind him, nor did he hear any of the riders yell or call to him at any time with regard to slow driving or any other matter. He did, however, acknowledge that during the second quarter of the race, he permitted Cherokee Express to take a "breather", and run slightly more slowly to preserve his strength so as to be as competitive as possible to outrun any horse making a challenge at the end of the race.[2] Petitioner repeatedly testified that it is his obligation as a driver to exert his best efforts to win any race he drives in, and that his conduct in the eleventh race on August 5, 1987 was consistent with this obligation.

In a report dated April 7, 1988, the Hearing Officer found that petitioner violated 9 NYCRR 4117.4 (m) by setting an excessively slow pace in the early quarters of the race, thus substantially altering the pattern of the race, and recommended confirmation of the eight-day suspension imposed upon him. The Racing Board confirmed the Hearing Officer's findings by its findings and order dated May 3, 1988.

Petitioner subsequently commenced the instant article 78 proceeding on May 10, 1988. By order entered September 16, 1988, Supreme Court, New York County (Charles Ramos, J.), transferred the proceeding to this court because the petition alleges that the Racing Board's determination was not based on substantial evidence, and was arbitrary, capricious and an abuse of discretion.

A review of the record and the videotape of the subject race makes it clear to us that determination of the Racing Board is not based upon substantial evidence showing petitioner excessively slowed the field during the second quarter and was indeed arbitrary and capricious. Neither the record nor the videotape yield "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact". (See, 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 180 [1978].)

The primary evidence in the case herein consists of the videotape of the eleventh race on August 5, 1987. As soon as

---

2. This is a common practice, and, according to both petitioner and Gray, a common and appropriate strategy regularly used in horse races, consistent with fair winning tactics.

the race started, Cherokee Express, who was number four, pulled out, and remained, in front of the pack, next to the inner rail. At no time in the race was there less than a solid length lead over the next horse. During the second quarter, Cherokee Express seemed to run slightly more slowly; however, the next horse simply advanced from a distance of 1½ lengths behind to one length behind Cherokee Express. The distance again widened shortly thereafter, and continued to do so, with Cherokee Express winning by some three lengths.[3] There was absolutely no confusion or interference among the trailing horses during the second quarter of the race. It is obvious that petitioner did nothing which either assisted or impeded any other driver from winning the race. Indeed, petitioner whipped his horse to encourage him to run faster, as did the other drivers with their horses.

We are aware that New York State " 'has an important interest in assuring the integrity of the racing carried on under its auspices' ". (Matter of Bokman v New York State Racing & Wagering Bd., 77 AD2d 459, 461 [4th Dept 1980], quoting Barry v Barchi, 443 US 55, 64.) Indeed, the statute herein involved was enacted specifically to protect the public and competitors from tainted horse racing, as well as to protect horses and riders from injury. (Compare, Matter of Casse v New York State Racing & Wagering Bd., 70 NY2d 589, 597 [1987] [petitioner trainer responsible for introducing drugs into horse's bloodstream suspended]; accord, Matter of Mosher v New York State Racing & Wagering Bd., 74 NY2d 688 [1989]; see also, Matter of Tappis v New York State Racing & Wagering Bd., 36 NY2d 862, 864 [1975] [sanctions imposed on owner of horse, where owner was discovered in conversation with trainer of another horse just prior to race].)

While the Racing Board has been vested with the statutory authority to suspend a driver's license where he has violated the rules and regulations designed to ensure against the appearance of impropriety and to promote safety on the track, where, as here, there is no substantial evidence to support the contention that a driver engaged in conduct designed to effectuate a change in the outcome, pattern or timing of a race, a suspension is unwarranted. (See, Matter of Rolla v Barry, 70 AD2d 717, 718 [3d Dept 1979]; see also, Dancer v

---

3. The teletimer records show that Cherokee Express, as the lead horse in all four quarters of the mile race, had the following quarter times: 30.1, 32.1, 30.2, 30.0.

*Commonwealth, Harness Racing Commn.,* 10 Pa Commw 642, 309 A2d 614 [1973].) We therefore conclude that the administrative determination appealed from herein is unsupported by substantial evidence, is arbitrary, capricious and constitutes an abuse of discretion, and is lacking in any rational basis which would require this court to confirm its findings. *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 231-232 [1974].)

Accordingly, petitioner's application, pursuant to article 78, seeking to annul the order of the New York State Racing and Wagering Board dated May 3, 1988 confirming a suspension of petitioner's harness racing license for eight days should be granted, and the order annulled, without costs.

SULLIVAN, J. P., MILONAS, WALLACH and SMITH, JJ., concur.

Petition granted, and determination of respondents dated May 3, 1988, annulled, without costs and without disbursements.