■ In the Matter of NICHOLAS P. ZITO, Petitioner, v NEW YORK STATE RACING AND WAGERING BOARD, Respondent. [752 NYS2d 109] —Mugglin, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which found that petitioner violated certain racing regulations.

Mark's Minor, a thoroughbred racehorse trained by petitioner, finished in second place in the second race at Saratoga Race Course in Saratoga County on August 2, 2000. A urine sample taken from the horse 38 minutes after the race tested positive for the proscribed substance lidocaine. Petitioner was fined $1,000 and suspended for 15 days. Upon administrative appeal, the Hearing Officer, after a hearing, recommended the $1,000 fine, but no suspension. Respondent increased the fine to $2,000 and affirmed the 15-day suspension with five days to be stayed on certain conditions. Petitioner instituted this CPLR article 78 proceeding challenging respondent's determination, contending, inter alia, that the determination is not supported by substantial evidence, that it is arbitrary, capricious and constitutes an abuse of discretion, and that the penalty of suspension is harsh, arbitrary, capricious and irrational.

Pursuant to 9 NYCRR 4043.2 (f), the administration of

lidocaine is proscribed within one week of the start of a racing program, which itself is defined as "[t]he scheduled post-time of the first race of a program containing a race in which the horse is to compete" (9 NYCRR 4043.1 [h]). Furthermore, 9 NYCRR 4043.4, commonly known as the "trainer responsibility rule," states:

"A trainer shall be responsible at all times for the condition of all horses trained by him. No trainer shall start or permit a horse in his custody, care or control to be started if he knows, or he might have known or have cause to believe, that the horse has received any drug or other restricted substance that could result in a positive test. The trainer shall be held responsible for any positive test unless he can show by substantial evidence that neither he nor any employee nor agent was responsible for the administration of the drug or other restricted substance. Every trainer must guard each horse trained by him in such manner and for such period of time prior to racing the horse so as to prevent any person, whether or not employed by or connected with the owner or trainer, from administering any drug or other restricted substance to such horse contrary to this Part." With respect to this rule, the Court of Appeals has held: "The rule places strict responsibility on a trainer to ensure that a horse in his or her care and custody does not receive any drug or other restricted substance within specified periods before a race. If the horse tests positive, the trainer is presumed responsible and is subject to penalty, including license suspension. The presumption is rebutted only when the trainer comes forward with substantial evidence that neither the trainer nor any employee or agent was responsible for administration of the drug or other restricted substance. Thus, proper application of the rule requires a reviewing court first to determine whether there is substantial evidence of a positive drug test within the proscribed period. Such evidence triggers a presumption of the trainer's responsibility. The reviewing court then must inquire whether the trainer has rebutted this presumption by substantial evidence" (*Matter of Mosher v New York State Racing & Wagering Bd.*, 74 NY2d 688, 690 [citation omitted]).

Guided by these principles, we first note that the veterinarian who performed the tests testified during respondent's direct case that in his professional opinion lidocaine had been administered to this horse within 24 hours prior to the race, and that it was "absolutely certain" that it had been administered within the previous one week in violation of respondent's regulations. This testimony, together with the testimony of

respondent's other witness and the extensive documentary evidence admitted, constitutes substantial evidence of a positive drug test within the proscribed period. We, therefore, examine the record to determine if petitioner has rebutted the presumption of his responsibility by substantial evidence. In this regard, we first note that petitioner does not contest the laboratory finding that his horse's urine tested positive for lidocaine nor does he argue that the testing procedures were in any way flawed. Instead, petitioner argues a violation of respondent's rules has not been proven by substantial evidence. Petitioner's rationale is that the racing program began at 1:00 P.M., the blood and urine samples were not taken from his horse until 75 minutes later (that is, 38 minutes after the second race), and that since lidocaine can be detected in a horse's urine as soon as 30 minutes after it has been administered, respondent cannot prove whether the lidocaine found in his horse was administered to or ingested by the horse prior to the start of the racing program; if it was after the start, there is no rule violation.

The primary flaw in petitioner's argument is factual. It depends not on a showing by substantial evidence to rebut his responsibility, but on purely speculative evidence that this horse came in contact with lidocaine either in a receiving barn, where no other horse tested positive for lidocaine, or by licking salve from a handler's hands, in the absence of any testimony that such an event occurred. Moreover, such an argument is flawed from a legal point of view because reviewing courts have consistently referred to a ban on substances prior to the start of the race in which the horse is competing, not to the start of the racing program (*see id.* at 689; *Matter of Casse v New York State Racing & Wagering Bd.*, 70 NY2d 589, 594; *Equine Practitioners Assn. v New York State Racing & Wagering Bd.*, 66 NY2d 786, 787; *Matter of Beckwith v New York State Racing & Wagering Bd.*, 219 AD2d 516). Speculation will not rebut the presumption (*see 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180-181). Neither will testimony that petitioner and his employees did not use lidocaine since the rule requires him to prevent any person, whether or not employed by or connected with him, from administering the drug (*see Matter of Allen v Bilinski*, 237 AD2d 231).

We next reject petitioner's challenge to the penalty imposed. An administrative penalty will not be disturbed unless it is found to be " 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fair-

ness'" (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 233, quoting *Matter of McDermott v Murphy*, 15 AD2d 479, *affd* 12 NY2d 780). The penalty here imposed was typical and well within the range of penalties imposed by respondent in similar cases, and we find no basis upon which to disturb it.

We also reject petitioner's contention that his due process rights were violated. This claim, based on petitioner's assertion that respondent failed to review the hearing minutes prior to making a determination, has not been properly preserved for review (*cf. Matter of Ferraro v State of New York Racing & Wagering Bd., Div. of Thoroughbred*, 284 AD2d 949, 950). In any event, were we to reach this argument, we would find the claim is without merit since there is no showing that respondent failed to make an independent appraisal and reach an independent conclusion based on the record (*see Matter of Nehorayoff v Fernandez*, 191 AD2d 833, 835).

We have considered the balance of petitioner's arguments and find them to be equally unavailing.

Cardona, P.J., Peters, Spain and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.