■ In the Matter of Todd Pletcher, Petitioner, v New York State Racing and Wagering Board, Respondent. [826 NYS2d 468]—

Cardona, P.J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Saratoga County) to review a determination of respondent which found that petitioner had administered mepivicaine to a horse within seven days of a race.

Tales of Glory, a thoroughbred racehorse trained by petitioner, won the third race at Saratoga Racetrack on August 14, 2004. Post-race blood and urine samples taken from the horse tested positive for mepivicaine, a substance that respondent's regulations at that time prohibited from being "administered by any means within one week of the start of a racing program" (9 NYCRR 4043.2 former [f]).[1] Following a steward's hearing, State Steward Carmine Donofrio determined that petitioner, the horse's trainer, violated the regulation. He suspended petitioner's license for 45 days and fined him $3,000. Petitioner pursued an administrative appeal and, after a hearing, the Hearing Officer recommended that the suspension and fine be sustained. Respondent adopted the Hearing Officer's findings of fact and conclusions of law, and affirmed Donofrio's decision. Petitioner then commenced this CPLR article 78 proceeding challenging respondent's determination, which proceeding has been transferred to this Court.

As limited by his brief, petitioner challenges respondent's interpretation of the pertinent regulations, disputes the determination that petitioner administered mepivicaine to Tales of Glory, and contends that respondent improperly interfered with Donofrio's decision-making process as it pertains to the penalty imposed. For the reasons that follow, we are unpersuaded by each of petitioner's arguments and confirm respondent's determination.

Initially, petitioner argues that respondent misinterpreted the word "administer" as used in 9 NYCRR part 4043. "Administer"

---

1. Respondent's regulations have since been revised to permit administration of mepivicaine "until 96 hours before the scheduled post time of the race in which the horse is to compete" (9 NYCRR 4043.2 [g] [12]).

is defined at 9 NYCRR 4043.1 (a) as to "[c]ause the introduction of a substance into the body of a horse." Petitioner complains that respondent arbitrarily interprets that term to include not only deliberate introduction of a substance, but also introduction by unintentional or reckless acts, or, indeed, by no act at all. This, he submits, unfairly burdens trainers because, by applying this interpretation in the context of the so-called "trainer responsibility rule" (*see* 9 NYCRR 4043.4),[2] respondent imposes strict liability on trainers for positive test results regardless of how the restricted substance entered the horse's system. A more logical definition, petitioner suggests, would be to read an element of deliberate intent into the regulations, such that a drug cannot be said to be "administered" to a horse unless someone willfully and consciously acts to introduce it into the horse's system.

Petitioner's argument overlooks the purpose and policy behind the trainer responsibility rule. By creating a rebuttable presumption that a trainer is "responsible for any positive test" (9 NYCRR 4043.4), the rule deliberately "places *strict responsibility* upon the trainer to ensure that a horse in his [or her] care and custody does not receive any drug or other restricted substance within certain specified periods of time prior to a race" (*Matter of Casse v New York State Racing & Wagering Bd.*, 70 NY2d 589, 594 [1987] [emphasis added]; *see Matter of Mosher v New York State Racing & Wagering Bd.*, 74 NY2d 688, 690 [1989]). The burden of this presumption is imposed upon trainers for the purpose of protecting the state's "interest in assuring the fairness and integrity of horse racing" (*Matter of Casse v New York State Racing & Wagering Bd., supra* at 595), since the trainer is "the one individual who, by virtue of his [or her] care and control of a horse, is best able to prevent the administering of a restricted drug or other substance to the horse, or to know who has done so" (*id.* at 596). Considered in this context, we cannot say that respondent's construction of

---

2. 9 NYCRR 4043.4 provides:

"A trainer shall be responsible at all times for the condition of all horses trained by him. No trainer shall start or permit a horse in his custody, care or control to be started if he knows, or he might have known or have cause to believe, that the horse has received any drug or other restricted substance that could result in a positive test. The trainer shall be held responsible for any positive test unless he can show by substantial evidence that neither he nor any employee nor agent was responsible for the administration of the drug or other restricted substance. Every trainer must guard each horse trained by him in such manner and for such period of time prior to racing the horse so as to prevent any person, whether or not employed by or connected with the owner or trainer, from administering any drug or other restricted substance to such horse contrary to this Part."

the regulations is irrational or unreasonable (*see Matter of Johnson v Joy*, 48 NY2d 689, 691 [1979]; *Matter of Bokman v New York State Racing & Wagering Bd.*, 77 AD2d 459, 461 [1980]; *cf. Matter of Ontario County v Capital Dist. Regional Off-Track Betting Corp.*, 162 AD2d 865, 866-867 [1990]).

Importantly, the trainer responsibility rule does not impose absolute liability upon a trainer for a positive test result (*see Matter of Casse v New York State Racing & Wagering Bd., supra* at 596-597). Once the presumption has been raised, the trainer can rebut it with substantial evidence proving that he or she is, in fact, not responsible for the drug's presence in the horse's body (*see* 9 NYCRR 4043.4; *Matter of Mosher v New York State Racing & Wagering Bd., supra* at 690; *Matter of Casse v New York State Racing & Wagering Bd., supra* at 592). Applying that rule herein, we agree with respondent that the presumption of petitioner's responsibility was raised by the testimony of George Maylin, an associate professor of toxicology at the State College of Veterinary Medicine at Cornell University and director of respondent's Drug Testing and Research Program, who opined that Tales of Glory was administered mepivicaine within seven days prior to the race, and by evidence that the horse had not otherwise received that drug within the months preceding the race (*see Matter of Mosher v New York State Racing & Wagering Bd., supra* at 689-690; *Matter of Dutrow v New York State Racing & Wagering Bd.*, 18 AD3d 947, 947 [2005]). In attempting to rebut that proof, petitioner proffered the conflicting expert opinion of Steven Barker, a professor at Louisiana State University and state chemist to the Louisiana State Racing Commission, who opined that the horse was inadvertently exposed to mepivicaine from an unknown source. Through Barker and other witnesses, petitioner tendered various theories to explain how the drug entered the horse's system.

On this record, we find no basis to disturb respondent's conclusion that petitioner failed to rebut the presumption. Respondent acted within its discretion when it credited Maylin's expert opinion over Barker's (*see Matter of Dutrow v New York State Racing & Wagering Bd., supra* at 948). It also properly disregarded the alternative theories of contamination, since "[s]peculation will not rebut the presumption" (*Matter of Zito v New York State Racing & Wagering Bd.*, 300 AD2d 805, 807 [2002], *lv denied* 100 NY2d 502 [2003]).

Finally, petitioner contends that respondent improperly interfered with Donofrio's imposition of the penalty. Specifically, petitioner complains that respondent's director of operations, Joe Lynch, ordered Donofrio in an e-mail to impose a stricter

penalty than Donofrio considered appropriate. However, our examination of the communication at issue reveals that Lynch simply informed Donofrio of the range of penalties previously imposed for mepivicaine infractions and remarked that the substantially lighter penalty originally considered by Donofrio seemed inappropriate in that context. Neither the tone nor the language of the communication is coercive, and the penalty ultimately imposed by Donofrio is in line with those imposed in similar circumstances (*see e.g. Matter of Casse v New York State Racing & Wagering Bd., supra*; *Matter of Dutrow v New York State Racing & Wagering Bd., supra*).

We have considered petitioner's remaining arguments and find them unavailing.

Spain, Carpinello, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.