**BLUMENTHAL INVESTMENT TRUSTS, an Iowa Partnership, Appellant,**

v.

**The CITY OF WEST DES MOINES, Iowa, Appellee.**

No. 99–1458.

Supreme Court of Iowa.

Nov. 15, 2001.

Thomas D. Hanson and Barry A. Russell of Hanson, Bjork & Russell, L.L.P., Des Moines, for appellant.

Lee H. Gaudineer of Gaudineer & Comito, L.L.P., Des Moines, and Ivan Webber of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee.

TERNUS, Justice.

The appellant, Blumenthal Investment Trusts [hereinafter "the Trust"], sued the appellee, the City of West Des Moines, Iowa for injunctive relief and money damages after the City placed unacceptable conditions on a plat approval sought by the Trust. The case was tried to the court, which resulted in a ruling in favor of the City. The Trust appeals. We affirm.

I. *Standard of Review.*

Our scope of review depends on how the case was tried in the district court. *In re Estate of Rutter,* 633 N.W.2d 740, 746 (Iowa 2001). This case was brought and tried as an equity case. Therefore, we review de novo. Iowa R.App. P. 4. The presence of constitutional issues also requires that we "review de novo the evidence bearing on" those issues. *Iowa Coal Mining Co. v. Monroe County,* 494 N.W.2d 664, 668 (Iowa 1993).

II. *Background Facts and Proceedings.*

Upon our de novo review of the evidence, we find the following facts. The Trust is an Iowa partnership of irrevocable trusts that owns undeveloped land in West Des Moines. Two tracts of land are implicated in the present dispute; both lie between Fuller Road and Grand Avenue in the vicinity of South 50th Street. A forty-acre parcel abuts South 50th. A smaller, nineteen-acre tract is located approximately one-quarter mile east of South 50th, directly north of Oakwood Lane.

The area in question began to undergo development in the 1990s and in 1995 the Trust filed a plat application with the City for the development of the nineteen-acre parcel, designated as Quail Park Vista. City staff, the City's planning and zoning commission, and the City's department of community development reviewed the application. All recommended that plat approval be conditioned on the developer's acceptance of responsibility to participate equitably in the paving of South 50th, which at that time was primarily a gravel road. It was suggested that the developer be given a choice of two alternatives: (1) enter into an agreement with the City, which we shall call an assessment agreement,[1] whereby the City would pave the street and the developer would be assessed its "pro-rata share" of the cost, or (2) make arrangements with other landowners

---

1. The City used the term "petition and waiver" to describe this agreement. We find this terminology confusing when used in connection with the financing and building of public improvements. Iowa Code section 384.41 (1995) sets forth a petition and waiver procedure by which property owners may initiate, by petition, a plan for public improvements to be financed by special assessments. As part of this statutory process, "all of the owners of record of all property to be affected by the public improvement" agree to the plan and may agree to waive the notice required by section 384.50 with respect to special assessments. Iowa Code § 384.41(1). The proposed assessment agreement between the City and the Trust is clearly not a petition such as is contemplated by section 384.41.

to pave, at their expense, a segment of the road per City specifications.

The Trust objected to the form of the assessment agreement, as did another property owner, St. Francis of Assisi Catholic Church, who was asked to sign an identical assessment agreement at about the same time. The primary concern of these landowners was the breadth of the waiver of statutory rights required by the agreement. The Trust in particular was concerned about the fact that the agreement did not specify the amount of any future assessment and did not allow the developer to protest any such assessment.

A decision was eventually made, at the suggestion of the City's bond counsel, to revise the agreement to address the concerns raised by the Trust and St. Francis. The catchall waiver language was deleted from the agreement and additional language was added requiring that any future assessment be made pursuant to the City's administrative policy 3–6 on special assessments for streets. At a subsequent meeting of the city council, the revised agreement was discussed. The city attorney stated that under the new agreement a developer could challenge whether the City had followed its own policy and state law in making the assessment and whether the City's calculations were correct. Even the revised agreement, however, required the developer to waive (1) "[a]ll legal formalities of whatsoever kind or character required by the laws of Iowa" with respect to future improvements, (2) "[a]ny limitation on the amount of the assessment as a percentage of valuation," and (3) "[a]ny right to defer or postpone payment of any such assessment."

After rejecting any further change to the agreement, the council approved the plat sought by St. Francis, subject to St. Francis's signing the revised assessment agreement. The council then approved the Trust's plat, but conditioned filing of the plat on the Trust's participation in the private paving of South 50th or its execution of the revised assessment agreement.

The Trust did not appeal the city council's decision on its plat application. Rather, it elected to pursue negotiations for the private paving of a portion of the street. When these negotiations were not successful, the Trust filed this lawsuit some six months later.

■ The Trust alleged that the City's requirement that the Trust execute the assessment agreement or pay for the private paving of the street violated several of its constitutional rights: (1) procedural due process; (2) substantive due process; and (3) equal protection. The Trust sought three types of relief: (1) an injunction against the use of the assessment agreement; (2) a mandatory injunction requiring the City to adopt formal procedures defining a developer's responsibility for off-site improvements; and (3) damages and attorney fees pursuant to 42 U.S.C. § 1983. Finally, the Trust sought damages based on the City's alleged improper interference with the Trust's prospective business expectations.[2]

---

2. The Trust complains on appeal that the trial court erred in refusing to allow the Trust to amend its petition a few months before the scheduled trial date. The amendment would have added several claims, including one based on a special assessment on a different piece of property located on South 35th and one pertaining to the Trust's forty-acre tract on South 50th. The trial court did not abuse its discretion in disallowing the amendment in view of the fact that the issues would have changed substantially only a short time before trial. *See Wooldridge v. Cent. United Life Ins. Co.*, 568 N.W.2d 44, 47 (Iowa 1997) (holding that refusal to allow amendment to pleading is reviewed for abuse of discretion); *Allison–Kesley Ag Ctr., Inc. v. Hildebrand*, 485 N.W.2d 841, 845 (Iowa 1992) (stating an amendment

This case was tried to the court. The Trust sought to prove that the City's actions were arbitrary and capricious, favored certain developers over others, and were motivated by concern for the City's financial interests over the interests of the Trust. In rendering its ruling, the trial court concluded that the Trust's § 1983 claims were not ripe for adjudication because the Trust had failed to exhaust state remedies available to it. Nonetheless, the court also rejected the Trust's constitutional claims on their merits. The district court held that the Trust's request for injunctive relief was moot because South 50th between Fuller Road and Grand Avenue was fully paved, and the City had not prevented the development of Quail Park Vista despite the Trust's failure to execute the assessment agreement.[3] Finally, the court rejected the Trust's tort claim, finding that the Trust had not proved any interference by or improper motive on the part of the City.

■■■ The Trust has appealed, claiming error in the trial court's rulings. We address each claim separately.[4]

## III. Exhaustion of State Remedies.

Although the district court addressed the merits of each claim asserted by the Trust, it also held that "a § 1983 action will not lie when there is an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty." The court held that Iowa Code section 354.10 provides "an adequate state remedy for [the Trust's] claims."

Iowa Code section 354.10 allows any person aggrieved during the process of obtaining approval for a subdivision plat to appeal to the district court. Iowa Code § 354.10 (1995). This statute expressly provides that an applicant may be aggrieved by "[t]he requirements imposed by a governing body as a condition of approval." Id. Thus, the Trust clearly had a right to appeal the City's decision to place conditions on its approval of the Trust's plat application. The City continues to assert on appeal that the Trust's failure to pursue this avenue of review forecloses any claim under § 1983.

In support of its assertion that the Trust's claim is not "ripe" for adjudication, the City relies on cases imposing two conditions on a litigant bringing a takings claim under the Fifth Amendment. In the context of a takings claim, a plaintiff must show that the underlying proceedings are final and that all state remedies have been

that substantially changes the issues should not be allowed).

3. During the pendency of this lawsuit, the private paving of South 50th by other developers continued without any participation by the Trust. When only 700 feet of unpaved road remained between Fuller and Grand, the City initiated a special assessment to pave this portion of South 50th and included Quail Park Vista in the assessment district. When the Trust objected to the assessment, the City withdrew Quail Park Vista from the proposed district. At the same time, the City removed the conditions it had placed on its approval of the Trust's plat application. The development of Quail Park Vista proceeded, unencumbered by the assessment agreement.

4. Although the Trust asserts both facial and as-applied challenges to the City's platting decision, we consider only the as-applied claims. If government action is constitutional as applied to a particular plaintiff, that plaintiff, with certain exceptions not applicable here, has no standing to assert a facial challenge. See State v. Robinson, 618 N.W.2d 306, 311 n. 1 (Iowa 2000); Baker v. City of Iowa City, 260 N.W.2d 427, 430 (Iowa 1977). Because we find the City's action constitutional as applied to the Trust, the Trust may not obtain relief based on an allegation that the conditions imposed on the Trust may be unconstitutional in other situations.

exhausted. *Iowa Coal Mining Co. v. Monroe County*, 555 N.W.2d 418, 432 (Iowa 1996) (*Iowa Coal Mining II* ) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 185–95, 105 S.Ct. 3108, 3115–21, 87 L.Ed.2d 126, 138–44 (1985)). The distinction between these two concepts has been explained as follows:

> The question whether administrative remedies must be exhausted is conceptually distinct ... from the question whether an administrative action must be final before it is judicially reviewable. While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

*Williamson County*, 473 U.S. at 192–93, 105 S.Ct. at 3119–20, 87 L.Ed.2d at 142–43 (citations omitted). It is the latter concept—exhaustion of remedies—that the City claims has not been satisfied here.

 Contrary to the district court's blanket statement that state remedies must be exhausted before one may assert a § 1983 claim, the prerequisites for a § 1983 suit depend on the underlying basis for the claim. For example, as we have already stated, a Fifth Amendment takings claim brought under § 1983 must satisfy both conditions of finality and exhaustion. *Iowa Coal Mining II*, 555 N.W.2d at 432. In contrast, exhaustion of state remedies is *not* a prerequisite to a § 1983 substantive due process claim. *City of Iowa City v. Hagen Elecs., Inc.*, 545 N.W.2d 530, 535 (Iowa 1996); *Bakken v. City of Council Bluffs*, 470 N.W.2d 34, 39 (Iowa 1991). Nor is it a prerequisite to an equal protection challenge. *Christopher Lake Dev. Co. v. St. Louis County*, 35 F.3d 1269, 1273 (8th Cir.1994).[5]

 At this juncture, it is important to identify the nature of the claim being asserted by the Trust. The City contends that the Trust's substantive due process claim is really a Fifth Amendment takings claim. The Trust, however, has consistently maintained throughout the course of these proceedings that it is not making a claim under the Fifth Amendment, but rather challenges the City's action under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

 We think the Trust has placed the correct label on its claims. With two exceptions not applicable here, the United States Supreme Court has recognized that land-use regulation does not effect a taking if it substantially advances a legitimate state interest.[6] *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798, 812–13 (1992); *accord Bormann v. Bd. of Supervisors*, 584 N.W.2d 309, 316 (Iowa 1998). In contrast,

---

**5.** We do not separately identify the ripeness requirements for the Trust's procedural due process claim because, as we determine later in this opinion, the allegations in support of that claim are more properly considered in connection with the Trust's substantive due process claim.

**6.** The two situations that result in a per se taking are (1) where the regulation compels the property owner to suffer a physical invasion of his property, and (2) where the regulation denies all economically beneficial or productive use of the land. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798, 812–13 (1992). Clearly, neither situation exists under the facts of this case.

a substantive due process claim is based on the premise that the interference with property rights was " 'clearly arbitrary and unreasonable,' " in addition to " 'having no substantial relation to the public health, safety, morals, or a general welfare.' " *Bakken*, 470 N.W.2d at 38 (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303, 314 (1926)). In its petition, the Trust alleged that the City's decision was "arbitrary and capricious" and had no "demonstrable rational relationship to the future general welfare of the community." We think these allegations reflect a substantive due process claim, not a takings claim.

Having concluded that the Trust's § 1983 claim is based on theories of substantive due process and equal protection, we must also conclude that the district court erred in ruling that the Trust was required to appeal the City's decision before pursuing remedies under § 1983. As we stated above, exhaustion of state remedies is not a prerequisite for substantive due process and equal protection violations. Such claims may be pursued if the decision they challenge is final. Here, the City does not dispute that its decision on the Trust's application for plat approval was final. As the Trust points out, no further action by the City was contemplated, procedures for obtaining a variance are not applicable, and there is no provision for an intra-municipal appeal. Accordingly, the Trust's § 1983 claim is "ripe" for adjudication and the district court erred in ruling to the contrary.

IV. *Procedural Due Process.*

 The requirements of procedural due process are simple and well established: (1) notice; and (2) a meaningful opportunity to be heard. *Aluminum Co. v. Musal*, 622 N.W.2d 476, 479 (Iowa 2001).

The Trust argues here that the assessment agreement required it to waive its statutory and due process rights to notice and hearing with respect to *future* special assessments. In addition, the Trust supports its procedural due process claim with the following arguments: (1) the City's decision to require an assessment agreement was illegal and ultra vires because the agreement conflicted with state laws governing special assessments; and (2) the assessment agreement was unconstitutionally vague.

Noticeably absent from these arguments, however, is any claim that the Trust did not have notice of the city council meetings at which its plat application would be considered. Nor is there any claim that the Trust was not given a meaningful opportunity to be heard on its application. Moreover, the record shows that such claims would have no merit even if they had been made. Not only did the Trust's representatives participate in at least three city council meetings at which its application was discussed, the assessment agreement was exhaustively debated at these meetings. In addition, as we pointed out earlier, state law provided an opportunity for the Trust to obtain judicial review of the City's decision in order to correct any legal error inhering in that decision. *See Hudson v. Palmer*, 468 U.S. 517, 531–33, 104 S.Ct. 3194, 3202–04, 82 L.Ed.2d 393, 406–07 (1984) (holding there is no denial of procedural due process if the state affords a "meaningful post deprivation remedy" to challenge the administrative action); *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 829–30 (1st Cir. 1982) (holding developer was not denied procedural due process where board met with developer on multiple occasions, full public hearing was held on the plan, and judicial review would have been available in state court if the developer had so elected).

Turning to the actual arguments made by the Trust in support of its procedural due process claim, we conclude that these arguments more precisely relate to its substantive due process claim. The lawfulness and clarity of the assessment agreement are relevant to whether the City's decision to require execution of the agreement was arbitrary and unreasonable. We do not think these factors relate to whether proper notice and hearing were accorded with respect to the City's decision on the Trust's application for plat approval. Similarly, the fact that the agreement may cause a *future* deprivation of procedural due process based on a waiver of notice and hearing as to *future* special assessments does not diminish the fact that procedural due process was given with respect to the present plat decision at issue. Therefore, we agree with the district court that there is no merit to the Trust's claim that its procedural due process rights were violated.

## V. *Substantive Due Process.*

A substantive due process violation is not easy to prove, as the following observation of one court illustrates:

> [S]ubstantive due process doctrine "does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law." Rather, substantive due process is reserved for the most egregious governmental abuses against liberty or property rights, abuses that "shock the conscience or otherwise offend ... judicial notions of fairness ... [and that are] offensive to human dignity." With the exception of certain intrusions on an individual's privacy and bodily integrity, the collective conscience of the United States Supreme Court is not easily shocked.

*Rivkin v. Dover Township Rent Leveling Bd.*, 143 N.J. 352, 366-67, 671 A.2d 567, 575 (1996) (citations omitted). To avoid this stringent standard, the Trust, in a reversal of its earlier argument made in connection with the ripeness issue that this is not a takings case, argues that we should apply the test enunciated in relatively recent United States Supreme Court cases for regulatory takings. *See Dolan v. City of Tigard,* 512 U.S. 374, 391, 114 S.Ct. 2309, 2319, 129 L.Ed.2d 304, 320 (1994); *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 837, 107 S.Ct. 3141, 3148-49, 97 L.Ed.2d 677, 689 (1987). Although both *Dolan* and *Nollan* involve challenges to conditions placed on building permits, the plaintiffs in these cases, unlike the Trust here, alleged an unconstitutional taking under the Fifth Amendment. *Dolan,* 512 U.S. at 382, 114 S.Ct. at 2315, 129 L.Ed.2d at 314-15; *Nollan,* 483 U.S. at 829, 107 S.Ct. at 3144, 97 L.Ed.2d at 684. Because a takings claim is not being made in the case before us, we decline to apply the *Dolan/Nollan* test.

We now turn to substantive due process law. The applicable test for a substantive due process claim in the context of land use regulation is twofold:

> "First, it must be determined whether there has been a deprivation of a federally constitutionally protected interest, and secondly, whether the deprivation, if any, is the result of an abuse of government power sufficient to raise an ordinary tort to the stature of a constitutional violation."

*Bakken,* 470 N.W.2d at 38 (quoting *Rymer v. Douglas County,* 764 F.2d 796, 801 (11th Cir.1985)). Concerning the first prong, this court has noted: "When the right infringed is not fundamental, substantive due process demands no more than 'a "reasonable fit" between government purpose ... and the means chosen to advance that purpose.'" *ACCO Unlimited Corp. v.*

*City of Johnston*, 611 N.W.2d 506, 510 (Iowa 2000) (quoting *In re C.S.*, 516 N.W.2d 851, 861 (Iowa 1994)). In clarifying the second prong, we have stated that "a deprivation of a property interest is said to be of constitutional magnitude if it is undertaken 'for an improper motive and by means that were pretextual, arbitrary and capricious, and ... without any rational basis.'" *Bakken*, 470 N.W.2d at 39 (quoting *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989)); *accord Hagen Elecs.*, 545 N.W.2d at 536.

■■■ The Trust is rather vague with respect to what protected interest under the *federal constitution* was infringed by the City's platting decision. *Compare De-Blasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 601 (3d Cir.1995) (holding, in § 1983 case involving zoning decision, that "landowner's use and enjoyment of property" "is a property interest worthy of substantive due process protection"), *with Gosnell v. City of Troy*, 59 F.3d 654, 657–58 (7th Cir.1995) (stating that developers involved in land-use disputes may have a claim under the Takings Clause or the Equal Protection Clause, but they do not have a claim under substantive due process). It appears the Trust asserts a property interest in the right to have its land platted when it has allegedly met the requirements of the state subdivision statute and its right to have any special assessment comport with the procedures contained in the state assessment law. Assuming this property interest is constitutionally protected, it is clearly not a fundamental right. *See ACCO Unlimited Corp.*, 611 N.W.2d at 510 (holding that condemnation of property did not violate a fundamental right of the property owner). Therefore, for purposes of the first step in our analysis, there need only be a reasonable fit between the governmental purpose and the means used to advance that purpose. *Id.*

Here, the City conditioned its approval of the Trust's proposed plat on execution of the assessment agreement or participation in the private paving of South 50th in order to ensure that the public improvements necessary to the development of this area were in place. There can be no question that providing for this infrastructure promoted the comfort, safety and general welfare of the residents of the City. In fact, the Iowa statute dealing with approval of subdivision plats states that the platting authority "shall give consideration to the possible burden on public improvements and to a balance of interests between the proprietor, future purchasers, and the public interest in the subdivision ... when requiring the installation of public improvements in conjunction with approval of a subdivision." Iowa Code § 354.8. We conclude there was a reasonable fit between the City's purpose in imposing the condition and the condition itself.

■■■ Upon our consideration of the second step in the analysis, we conclude the Trust has not proved that the City's decision was pretextual, arbitrary, or capricious. Although the Trust argues that the condition imposed on plat approval was motivated by animosity toward Margo Blumenthal, one of the individuals who established the Trust, we do not find the supporting evidence in the record convincing. We also reject the Trust's argument that the assessment agreement was arbitrary and capricious because it imposed an "uncapped" obligation on the Trust to improve South 50th Street. The final version of the assessment agreement approved by the city council subjected any future assessment to the methodology contained in the City's street assessment policy, and to the comprehensive plan and state law. The Trust's own expert was able to apply the

methodology set forth in the street assessment policy to determine that the Trust's potential liability under the agreement was approximately $34,000. In addition, we do not think the alternative to the assessment agreement—a private paving agreement—was arbitrary and capricious. The evidence showed that it was quite common among developers and landowners to work together, if possible, to privately pave desired roadways to the City's specifications. In fact, that is how the vast majority of South 50th was paved, including a section in which the Trust voluntarily participated prior to the events giving rise to this litigation.

We also consider the Trust's argument that, because the assessment agreement conflicted with state procedures for special assessments set forth in chapter 384, the agreement was illegal and the City's act in requiring execution of the agreement was ultra vires. *See Hoepker v. City of Madison Plan Comm'n,* 209 Wis.2d 633, 645-46, 563 N.W.2d 145, 150-51 (1997) (holding that city's action in requiring landowners seeking plat approval to sign annexation petition that was contrary to the safeguards contained in annexation statute was illegal). To the extent these arguments have merit, a question we do not resolve, the mere illegality of the City's action would not raise its decision to the level of a constitutional substantive due process violation. *See Gosnell,* 59 F.3d at 658 ("If as the Gosnells say the City misunderstood the significance of the plat under state law, then they should be in state court; the due process clause does not require a state to implement its own law correctly."); *Harding v. County of Door,* 870 F.2d 430, 432 (7th Cir.1989) (holding that county board of adjustment's erroneous interpretation of zoning ordinance did not transform its rational decision into an ir-

rational one that violated the applicant's substantive due process rights); *Chesterfield Dev. Corp. v. City of Chesterfield,* 963 F.2d 1102, 1104–05 (8th Cir.1992) (holding that even if city knowingly enforced an invalid zoning ordinance in bad faith, bad-faith violation of state law remained only a violation of state law); *Petersen v. Davenport Cmty. Sch. Dist.,* 626 N.W.2d 99, 103 (Iowa 2001) (holding that even if a board of education acted beyond its authority, this state law violation would not give rise to a § 1983 claim).

We conclude our discussion of the Trust's substantive due process claim by addressing its argument that the City acted arbitrarily because it had no standards specifying when plat approval would be conditioned on the developer's agreement to participate in financing road improvements. Admittedly, the City's process for plat approval was ad hoc. But we note that under the liberal approach to subdivision decisions taken by this court, a platting authority has the flexibility to disapprove plats or condition approval for reasons that "are not spelled out in so many words" in the governing statutes and ordinances. *Oakes Constr. Co. v. City of Iowa City,* 304 N.W.2d 797, 806 (Iowa 1981). Moreover, the record shows that the city council and its staff made great efforts to work with area developers, including the Trust, to accomplish the necessary public improvements. In those instances where the City negotiated a different arrangement with a developer or made other concessions to a developer, there were concrete, rational reasons to do so. To the extent the City's procedure in providing for public improvements in developing areas could be characterized as arbitrary or even in excess of its authority, this procedure was not such as to "'shock [the] conscience or otherwise offend ... judicial notions of fairness.'" *Weimer v. Amen,* 870 F.2d 1400, 1405 (8th

Cir.1989) (quoting *Fitzgerald v. Williamson*, 787 F.2d 403, 408 (8th Cir.1986)); *accord Rivkin*, 671 A.2d at 577. We conclude, therefore, that the Trust failed to prove a substantive due process violation.

## VI. *Equal Protection.*

The Trust contends that the City violated the Equal Protection Clause by treating it differently than other developers seeking plat approval. *See* U.S. Const. amend. XIV, § 1. It asserts that other developers were allowed to sign a different form of the assessment agreement and some did not have to sign any assessment agreement. The Trust argues that the City impermissibly singled it out to bear the cost of paving South 50th.

The Equal Protection Clause requires that "similarly-situated persons be treated alike." *In re Morrow*, 616 N.W.2d 544, 548 (Iowa 2000). "If people are not similarly situated, their dissimilar treatment does not violate equal protection." *Id.* In addition, any governmental classification of persons must meet the applicable constitutional standard imposed under the Equal Protection Clause. *State v. Mann*, 602 N.W.2d 785, 792 (Iowa 1999). Because this case does not involve a suspect class or a fundamental right, any classification made by the City need only have a rational basis. *ACCO Unlimited Corp.*, 611 N.W.2d at 511. Under this standard, the City's classification of developers is constitutional if the classification "is a reasonable one and operates equally upon all within the class." *State v. Bell*, 572 N.W.2d 910, 912 (Iowa 1997).

Applying these standards, we fail to find an equal protection violation. Initially, we note that the Trust has not shown that other developers were similarly situated. To the contrary, in every instance where another developer was treated differently, there was some distinguishing factor that provided a rational basis for the different treatment. *See ACCO Unlimited Corp.*, 611 N.W.2d at 511–12; *see also Glen Haven Homes, Inc. v. Mills County Bd. of Review*, 507 N.W.2d 179, 183 (Iowa 1993) (holding that ad hoc determinations of taxpayers' entitlement to exemption did not violate equal protection). The Trust appears to believe that it was treated more harshly than any other developer, but the record does not support this belief. The City used a standard form for the assessment agreement and even revised this form at the request of the Trust and St. Francis to address their concerns. The assessment agreement made a condition of the Trust's plat approval was the same one imposed upon St. Francis.[7] Additionally, the evidence showed that many developers and landowners participated in the paving of South 50th. Any contention that the City tried to make the Trust alone pay for

---

7. The Trust takes the position that the City never sent the revised assessment agreement to the Trust's representatives and that it "knew nothing of the changes" to the agreement. There is no evidence in the record that the City ever personally delivered a copy of the revised agreement to the Trust. On the other hand, the evidence shows that the Trust was well aware that the City had revised its standard assessment agreement. Part of the record on appeal is the tape recording made of the final city council meeting at which the revised agreement was accepted and the applications of St. Francis and the Trust were approved. The court has reviewed this tape and is convinced anyone in attendance at that meeting would have understood that the standard form previously used by the City had been revised and that the *revised* assessment agreement was imposed as a condition on the plat approvals for both St. Francis and the Trust. Trust representatives were present at and participated in this meeting. Therefore, we reject any contention that the Trust was asked to execute an assessment agreement different than the one presented to St. Francis.

the paving of South 50th is wholly without merit.

In summary, we conclude that the City's different treatment of developers not similarly situated does not violate the Equal Protection Clause. The trial court was correct in ruling against the Trust on this claim.

## VII. *Tortious Interference With Prospective Business Advantage.*

The Trust claims the City's final plat conditions tortiously interfered with its prospective contractual relationships with future purchasers of lots in Quail Park Vista. The elements of this tort are as follows:

1. A prospective contractual or business relationship;

2. the defendant knew of the prospective relationship;

3. the defendant intentionally and improperly interfered with the relationship;

4. the defendant's interference caused the relationship to fail to materialize; and

5. the amount of resulting damages.

*Iowa Coal Mining II*, 555 N.W.2d at 438. The district court ruled against the Trust on this claim, finding that the Trust had not proved the City intentionally and improperly interfered with prospective sales, or that any activity of the City caused prospective sales to fall through.

We find it sufficient for purposes of our review to limit our discussion to the third element—intentional and improper interference. This element "requires proof that the [City] intended to financially injure or destroy the [Trust]." *Id.* The court found that the purpose of the City in placing conditions on the Trust's plat approval was to provide for needed city streets in the area of the development. There was substantial evidence in the record to support this finding. We think there was also substantial evidence to support the trial court's statement that there was "no credible evidence any city official was in any way prompted by hatred, ill will or other improper motive in any action under consideration in this case." Accordingly, we affirm the district court's dismissal of the Trust's tort claim.

## VIII. *Summary.*

Upon our de novo review, we concur in the district court's decision that the Trust's constitutional claims have no merit. We also find no error in the court's ruling on the Trust's intentional interference claim. Accordingly, we affirm the district court's decision dismissing the Trust's petition.

**AFFIRMED.**