William E. **DEATON**, Appellant,

v.

**KENTUCKY HORSE RACING AU-THORITY, Successor to the Kentucky Racing Commission, Appellee.**

No. 2003–CA–002485–MR.

Court of Appeals of Kentucky.

Dec. 3, 2004.

Discretionary Review Denied by Supreme Court Oct. 12, 2005.

Charles W. Curry, Lexington, KY, for Appellant.

Frank T. Becker, Lexington, KY, amicus curiae filed on behalf of Kentucky Horsemen's Benevolent and Protective Association.

J. Bruce Miller, Louisville, Spencer D. Noe, Lexington, KY, for Appellee.

Before JOHNSON, SCHRODER, and TACKETT, Judges.

## OPINION

SCHRODER, Judge.

A licensed thoroughbred trainer appeals an order of the Franklin Circuit Court which affirmed an opinion of the Kentucky Racing Commission[1] which affirmed and adopted a hearing officer's recommendation to suspend the trainer for 150 days after one of his horses tested positive for Prozac. The trainer did not overcome the presumption created by 810 KAR 1:018 Section 3(3), nor did he show the penalty was unreasonable. Hence we affirm.

William E. Deaton (Deaton) is a licensed thoroughbred trainer with a contract to train and race horses owned by Dr. Joseph E. Kutz. Deaton and Kutz considered the possibility that one of their horses, Explodo Red, expended too much energy prior to races due to his nervous nature. They also discussed possible solutions, including the possibility of using tranquilizers to improve the horse's performance. Dr. Kutz placed Prozac into some liquid glucosamine and gave the mixture to Deaton, who fed it to Explodo Red (in with his feed), three times daily, for approximately ten days. On February 17, 2002, Explodo Red was entered into a claiming race at Turfway Park, where he finished second. The standard testing of his urine sample revealed the Prozac, which is a prohibited substance for horses in racing.

The Racing Stewards disqualified Explodo Red's second place finish and suspended Deaton for 150 days. Dr. Kutz was also disciplined but that case is not before this Court. Deaton appealed his suspension. Dr. Kutz wrote a letter to the Commission in which he confessed to placing Prozac into the Equinyl bottle that Deaton fed to Explodo Red. Dr. Kutz also maintained that Deaton did not know the Prozac was in the mixture. The hearing officer for the Commission found that Deaton did not know the mixture contained Prozac. Nevertheless, the hearing officer also concluded that:

1. Kentucky Horse Racing Authority is the successor to the Kentucky Racing Commission.

6. Under 810 KAR 1:008, section 3 subsection (4) the trainer bears primary responsibility for the condition of all horses trained by him to ensure that no horse will race with prohibited drugs or medication.

7. Under 810 KAR 1:018, Section (3), subsection (2) a trainer is subject to disciplinary action if he participated in any manner in the administration of a banned substance.

8. In light of the stipulations, William Deaton violated regulations of 810 KAR 1:008, Section 3, subsection (4) and 810 KAR 1:018 Section (3), subsection (2).

9. Deaton asserts that the penalty imposed by the Stewards is inappropriate for the misconduct because Dr. Kutz added the Prozac to the feed mixture he gave to Deaton. If the Kentucky Racing Commission were to accept the assertion 810 KAR 1:008 Section (3) subsection (4) would be rendered meaningless. The regulation was promulgated to stop the very abuse, which occurred in this case. Deaton is responsible for the care of the horses he races and it is his responsibility to be sure that those horse [sic] race free of prohibited drugs or medications. If Deaton is to accept any mixture to be given to the horse from any other person, even the owner of the horse, he is under an obligation to be sure that the mixture does not contain any prohibited drug or medication which would be in the horse's system on race day.

10. The Stewards are given the authority to suspend a licensee for violation of an administrative regulation as may be deemed appropriate in keeping with the seriousness of the violation. Prozac is a Class 2 drug, which has a high potential for affecting the outcome of a race. As most other Class 2 drugs [P]rozac is intended to alter the consciousness or

the psychic state of humans, and has no approved or indicated use in a horse....

The Commission adopted the hearing officer's findings of fact and conclusions of law and upheld the 150–day suspension.

On appeal to the circuit court, Deaton contended the burden of proof was wrongly placed upon him and the penalty was not justified. Deaton argued that the burden of proof was improperly shifted from the Commission to the trainer, asserting that 810 KAR 1:018, Sections 1 and 3 conflicts with KRS 13B.090, which puts the burden of proof in administrative hearings on the Commission. The Amicus Brief also stresses this argument. The circuit court affirmed, reasoning that the regulations did not amount to "burden shifting" but created an affirmative defense, and that the evidence showed Deaton did not exercise reasonable care, much less a high degree of care, in safeguarding the horse.

█ On appeal to this Court, Deaton alleges the Commission's findings of fact are arbitrary and the conclusions of law were erroneous. Specifically, he contends 810 KAR 1:018, Section 3, subsection (3)(a) requires the Commission to show that Deaton failed to exercise a "high degree of care" in safeguarding the horse from tampering, that the Commission's ruling made Deaton *an insurer.*

It is important for our analysis to review the administrative regulations involved. 810 KAR 1:008, Section 3, states, in part: "A licensed trainer shall bear primary responsibility for the proper care, health, training condition, safety, and protection against the administration of prohibited drugs or medication of horses in his charge." 810 KAR 1:018, Section 1 provides, in part: "(1) While participating in a race, a horse shall not carry in its body any medication, drug, substance, or metabolic derivative, that: ... (b) Could serve

as a ... tranquilizer...." 810 KAR 1:018, Section 3(3) provides, in part:

> If the commission determines that a horse had been administered a medication, drug, substance, or metabolic derivative thereof in violation of Section 1 or 2 of this administrative regulation, a licensed trainer, assistant trainer, groom, stable watchman, or other person having the immediate care and custody of a horse governed by the provisions of this administrative regulation shall be subject to disciplinary action if he does not establish that he had:

> (a) Not been negligent by failing to exercise a high degree of care in safeguarding the horse from tampering....

This last section creates a *presumption* the trainer has to rebut. It does not change the burden of proof in 810 KAR 1:018, Section 3(3), or even KRS 13B.090(7). In a similar case involving harness racing (governed by Title 811 of the KAR), a panel of this Court dealt with similar regulations. *Allen v. Kentucky Horse Racing Authority*, Ky.App., 136 S.W.3d 54 (2004), involved a harness race at the Red Mile Racetrack in Lexington and a horse named CR Commando. Urine tests after two races revealed flunixin (an anti-inflammatory drug) in CR Commando's urine and the purse money in both races was ordered returned and the owner/trainer fined. 811 KAR 1:090, Section 5 also creates a presumption:

> If the post-race test or tests prescribed in Section 1 of this administrative regulation disclose the presence in a horse of any *medication, stimulant, sedative, depressant*, local anesthetic, or any foreign substance except as provided by Sections 14 and 15 of this administrative regulation, in any amount, it shall be presumed that the substance was administered by the person having control, care, or custody of the horse.

Also, 811 KAR 1:090, Section 7 provides, in part: "(1) A trainer shall be responsible at all times for the condition of all horses trained by him." The *Allen* Court referred to this as the "trainer responsibility rule." *Allen*, 136 S.W.3d at 61. In approving the creation of the presumption, the *Allen* Court cited with approval, the case of *Casse v. New York State Racing & Wagering Bd.*, 70 N.Y.2d 589, 523 N.Y.S.2d 423, 517 N.E.2d 1309 (1987). *Allen* noted the New York Court upheld the validity of the trainer responsibility rule and quoted from that opinion, with approval:

> Moreover, the trainer responsibility rule is a practical and effective means of promoting these State interests—both in deterring violations and in enforcing sanctions. The imposition of strict responsibility compels trainers to exercise a high degree of vigilance in guarding their horses and to report any illicit use of drugs, medications or other restricted substances by other individuals having access to their horses. Additionally, the rebuttable presumption of responsibility facilitates the very difficult enforcement of the restrictions on the use of drugs and other substances in horse racing. Indeed, it would be virtually impossible to regulate the administering of drugs to race horses if the trainers, the individuals primarily responsible for the care and condition of their horses, could not be held accountable for the illicit drugging of their horses or for the failure either to safeguard their horses against such drugging or to identify the person actually at fault. It is not surprising, therefore, that trainer responsibility rules have been upheld, almost without exception, in other jurisdictions.

*Allen* at 62, *quoting Casse*, 523 N.Y.S.2d 423, 517 N.E.2d at 1312. The *Allen* Court also cited with approval, decisions from

Ohio and California which upheld the trainer responsibility rule and its presumption. We believe the reasoning of the *Allen* Court in upholding the presumption in 811 KAR 1:090, Section 5 for harness racing would apply to the presumption created by 810 KAR 1:018, Section 3(3) as to thoroughbred racing.

■ Deaton also contends there was no finding that Prozac was a substance banned by 810 KAR 1:018, Section 3(2). The hearing officer's recommendation of June 10, 2002, states in paragraph six of the findings of fact that the parties stipulated Prozac is a prohibited substance. The circuit court opinion entered September 17, 2003, discusses the burden of proof in administrative hearings and assumes the horse tested positive for a prohibited substance under 810 KAR 1:018, Sections 1 and 3. Based on the earlier stipulations and on the fact that the distinction Deaton wants to make in this Court was not raised in the court below, the issue was not preserved and we decline to address the issue on appeal. *Phelps v. Louisville Water Co.*, Ky., 103 S.W.3d 46, 56 (2003); *Com., Revenue Cabinet v. St. Ledger*, Ky.App., 955 S.W.2d 539, 545 (1997).

■ Finally, Deaton contends the ruling was arbitrary and should be voided because it clearly was not commensurate with the crime, if any. He points out that the hearing officer found he had no knowledge that the owner spiked the bottle of liquid glucosamine with Prozac, that Deaton was suspended for 150 days while the owner/perpetrator of the crime only received a 30–day suspension. The appellee asserts that the owner *also* received a $25,000.00 fine in addition to his suspension. The appellant asserts the fine was imposed for attending the Kentucky Derby during his 30–day suspension and not for the Prozac incident. The circuit court did not compare the owner's penalty with the trainer's penalty but focused on the trainer's crime and the range of penalty, "not less than five (5) days nor greater than five (5) years. . . ." 810 KAR 1:028, Section 3(2). The circuit court did not disagree with the hearing officer's finding that Deaton did not know the liquid glucosamine contained Prozac. Instead, the circuit court concentrated on the trainer's negligence, the lack of reasonable care, much less a high degree of care, in safeguarding the horse. The circuit court concluded that with the trainer's earlier discussions with the owner about the possibility of using tranquilizers, specifically Prozac, to improve the horse's performance, the trainer was not without fault in administering the laced medicine. The circuit court concluded the penalty was not arbitrary and affirmed. KRS 13B.160 allows for an appeal to this Court. *Allen*, 136 S.W.3d at 57, recognized "[o]ne of the purposes of the horse racing statutes is to give the KHRA 'forceful control of horse racing in the Commonwealth . . . .' " and "to give the KHRA the power 'to regulate and maintain horse racing . . . free of any corrupt . . . or unprincipled horse racing practices, and to regulate and maintain horse racing . . . so as to dissipate any cloud of association with the undesirable and maintain the appearance as well as the fact of complete honesty and integrity of horse racing in the Commonwealth.' KRS 230.215(2)." Obviously, the horse industry is a major part of our economy which needs to not only enforce its regulations, but needs to deter violations in order to promote the Commonwealth's interest.

■ Realizing the State has a major industry involved in this case, we have to ask whether a five-month suspension is reasonable for a trainer's negligence in allowing one of his charges to be drugged. Under 810 KAR 1:028, Section 3(2), the range of disciplinary measures range from

a five-day suspension up to five years. In the present case, the Commission imposed a 150 day, or five-month suspension, which amounts to a little over eight percent of the maximum penalty possible. We see no evidence in the record indicating the penalty was excessive. Even considering the trainer's conduct was negligent and not intentional does not make the penalty unreasonable. "While the fines imposed may be intended to punish appellants, they are also designed to deter similar conduct in the future." *Vanhoose v. Commonwealth,* Ky.App., 995 S.W.2d 389, 393 (1999). "The assessment of a penalty is particularly delegated to the administrative agency. Its choice of sanction is not to be overturned unless 'it is unwarranted in law' or 'without justification in fact.' The assessment is not a factual finding but the exercise of a discretionary grant of power." *Id., quoting Panhandle Coop. Ass'n v. Environmental Protection Agency,* 771 F.2d 1149, 1151 (8th Cir.1985) (citations omitted).

For the foregoing reasons, the judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.