**IN THE COURT OF APPEALS OF IOWA**

No. 22-0990
Filed December 20, 2023

**STEVE ASMUSSEN,**
 Petitioner-Appellant,

**vs.**

**IOWA RACING AND GAMING COMMISSION,**
 Respondent-Appellee.
_____

 Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

 Petitioner appeals the decision of the district court that affirmed the imposition of a fine by the Iowa Racing and Gaming Commission for the presence of a prohibited substance in a horse. **AFFIRMED.**

 Clark O. Brewster and Joseph C. DeAngelis of Brewster & DeAngelis PLLC, Tulsa, Oklahoma, and Matthew Boles of Gribble, Boles, Stewart & Witosky Law, Des Moines, for appellant.

 Brenna Bird, Attorney General, and David M. Ranscht and Jeffrey C. Peterzalek, Assistant Attorneys General, for appellee.

 Heard by Greer, P.J., and Schumacher and Badding, JJ. Langholz, J., takes no part.

**SCHUMACHER, Judge.**

Steve Asmussen appeals the decision of the district court that affirmed the imposition of a fine by the Iowa Racing and Gaming Commission (IRGC) for the presence of a prohibited substance in a horse. We find no violation of Asmussen's substantive due process rights. Asmussen also did not show the IRGC failed to properly apply its own rules or that the agency's decision was not supported by substantial evidence. We affirm the district court's decision.

### I.      Background Facts & Proceedings

Asmussen is an international thoroughbred racehorse trainer and trained the racehorse Shang.[1] Shang finished second in a race at Prairie Meadows Racetrack and Casino on July 5, 2019. Prairie Meadows routinely conducts blood and urine testing of all first and second place horses. The test of Shang's blood and urine showed a low level of atenolol, a prohibited substance. Asmussen requested a second test, which was also positive for atenolol. Atenolol is a medication commonly prescribed to humans for high blood pressure. It is a prohibited substance for horses under the Drug Testing Standards and Practices Program Model Rules Guidelines used by the Association of Racing Commissioners International (ARCI).

A hearing before the Board of Stewards for Prairie Meadows was held on May 15, 2020. Asmussen did not dispute the positive test result but provided evidence about the potential cause of the presence of the substance in Shang. He claimed there was no evidence atenolol was administered to the horse. He

---

[1] Asmussen holds a license to train and racehorses in numerous jurisdictions, including Iowa.

asserted the trace amount of atenolol was due to environmental factors beyond his control.

The Board found, "[I]t was an inadvertent exposure, and not a deliberate administration." Also, "The Board feels the contamination most likely came from a person closely associated with the horse, and not from the local water." The Board concluded, "Although it is likely that the horse carried the drug in his system due to an inadvertent exposure, he nonetheless carried the drug in his system which necessitates the disqualification to ensure the integrity of racing, and to instill confidence in the betting public."

The Board found Asmussen violated Iowa Administrative Code rules 491-10.5(1)(a)(1), (2) and 491-10.7(1)(a), (b), and (c). The Board imposed a fine of $1000 and determined Shang would be disqualified from the second-place finish, so the purse money from the race would be redistributed. Asmussen's racing license in Iowa was not suspended.

Asmussen appealed the Board's ruling to IRGC, and a hearing was held before an administrative law judge (ALJ). The ALJ stated, "[T]he amount of Atenolol present in Shang was at an extremely low level and would not have given the horse any competitive benefit." The ALJ found:

> Asmussen has presented no evidence that would lead to a conclusion that Shang's positive test for Atenolol was somehow tainted, unreliable, flawed, or otherwise not deserving of credence. . . . Again, Asmussen's primary claim was not that the positive tests were wrong, but rather that they were caused by environmental or accidental exposure. Accordingly, the prima facie case, which was established by the positive test from a Commission-approved laboratory, has not been rebutted. The Commission has therefore established a violation of the trainer responsibility rule. Whether this can be called "strict liability" is mere semantics. Any evidence that the exposure may have been inadvertent or due to

environmental exposure goes to the degree of penalty to be imposed, not whether there was a violation.

The ALJ sustained the findings and penalties imposed by the Board of Stewards. IRGC affirmed the ALJ's decision without further opinion.

Asmussen petitioned for judicial review. The district court found no violation of Asmussen's procedural or substantive due process rights. The court also found the IRGC's ruling was supported by substantial evidence. It determined that the IRGC's ruling was not contrary to the IRCG's rules as the rules do not require evidence of the administration of a prohibited substance. The court stated the rules reflect the legislature's "intent to prohibit the presence of prohibited substances in a horse's system during a race and do not demonstrate any particular concern for *how* the substance gets into the horse's system." The court affirmed the IRGC's decision. Asmussen now appeals.

## II. Standard of Review

"In exercising judicial review of the agency's action, the district court acts as an appellate court, and its review is circumscribed by Iowa Code chapter 17A." *Johnston v. Iowa Dep't of Transp.,* 958 N.W.2d 180, 183–84 (Iowa 2021). "When reviewing the decision of the district court's judicial review ruling, we determine if we would reach the same result as the district court in our application of the Iowa Administrative Procedure Act." *Sladek v. Emp. Appeal Bd.,* 939 N.W.2d 632, 637 (Iowa 2020) (quoting *Insituform Techs., Inc. v. Emp. Appeal Bd.,* 728 N.W.2d 781, 787 (Iowa 2007)). The agency's factual findings are upheld on appeal if they are supported by substantial evidence when the record is viewed as a whole. *Evenson v. Winnebago Indus., Inc.,* 881 N.W.2d 360, 366 (Iowa 2016).

We consider whether there is substantial evidence to support the findings made by the agency, not whether the evidence could support different findings. *Larson Mfg. Co. v. Thorson,* 763 N.W.2d 842, 850 (Iowa 2009).

### III.    Substantive Due Process

Iowa has a trainer responsibility rule found in Iowa Administrative Code rule 491-10.5(1)(a)(1), and provides that a horse trainer is responsible for:

> The condition of horses entered in an official workout or race and, in the absence of substantial evidence to the contrary, for the presence of any prohibited drug, medication or other substance, including permitted medication in excess of the maximum allowable level, in such horses, regardless of the acts of third parties. A positive test for a prohibited drug, medication, or substance, including permitted medication in excess of the maximum allowable level, as reported by a commission-approved laboratory, is prima facie evidence of a violation of this rule or Iowa Code chapter 99D.

The Board of Stewards applied this rule, finding "Asmussen is the absolute insurer of, and responsible for the condition of the horse he entered in the seventh (7th) race on July 5, 2019." The Board determined the presence of atenolol in the horse after the race was prima facie evidence the drug was in the horse during the race. The Board concluded, "Although it is likely that the horse carried the drug in his system due to an inadvertent exposure, he nonetheless carried the drug in his system which necessitates the disqualification to ensure the integrity of racing, and to instill confidence in the betting public."

In his petition for judicial review, Asmussen claimed the trainer responsibility rule violated his right to substantive due process because it created an irrebuttable presumption.[2]  *See Weizberg v. City of Des Moines*, 923 N.W.2d 200, 216

---

[2] In his appeal to the IRGC, Asmussen raised this substantive due process claim. The ALJ noted the agency could not address this constitutional claim and

(Iowa 2018) (noting an irrebuttable presumption may violate substantive due process rights). Asmussen asserts there is an irrebuttable presumption that if a prohibited substance is present in a horse, the trainer is at fault no matter how the substance was introduced into the horse's system. He maintains that nothing in the process allows him to rebut his lack of fault for the presence of the drug. Accordingly, he argues that he should not be penalized because there was no evidence he administered the prohibited substance to the horse.

But IRGC contends the presumption relates to a positive post-race test which "means a horse ran the race while carrying the substance" and the rule assigns liability for that finding, not fault. IRGC argues the legislature can assign economic responsibility without fault to achieve deterrence goals. *See id.* at 217. And we note that if we apply the rational-basis level of scrutiny, as suggested by IRGC, that test is deferential to legislative judgment, but not a toothless standard of review. *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 9 (Iowa 2004); *accord Mathews v. de Castro*, 429 U.S. 181, 185 `(1976). So we address the substantive due process analysis to find the "judicial guardrails" on the application of this legislative action under the authority of Iowa Code section 99D.25 (2019). *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 548 (Iowa 2019) (examining if the

---

preserved the issue. The ALJ's decision was affirmed in its entirety by the IRGC. Asmussen does not make separate claims under the federal and state constitutional due process clauses. In his appellate brief he recognizes, "Iowa courts 'generally decline to apply divergent analyses under the two constitutions,'" citing *Clayton v. Iowa Dist. Ct.*, 907 N.W.2d 824, 827 (Iowa Ct. App. 2017). Therefore, we will not separately analyze his substantive due process claim under the federal and Iowa constitutions.

state interest in highway regulation and safety under the statute are rationally related to the means chosen to achieve that purpose).

The concept of substantive due process "prevents the government from interfering with 'rights implicit in the concept of ordered liberty.'" *State v. Russell*, 897 N.W.2d 717, 732 (Iowa 2017) (citation omitted). It is not easy to prove a substantive due process violation. *Bowers v. Polk Cnty. Bd. of Supervisors*, 638 N.W.2d 682, 694 (Iowa 2002).

> [The] substantive due process doctrine "does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law." Rather, substantive due process is reserved for the most egregious governmental abuses against liberty or property rights, abuses that "shock the conscience or otherwise offend . . . judicial notions of fairness . .. [and that are] offensive to human dignity." With the exception of certain intrusions on an individual's privacy and bodily integrity, the collective conscience of the United States Supreme Court is not easily shocked.

*Id.* (quoting *Blumenthal Inv. Trs. v. City of W. Des Moines*, 636 N.W.2d 255, 265 (Iowa 2001)).

We consider a substantive due process claim in a two-step process:

> Substantive due process claims have two stages of inquiry. First, we must determine the "nature of the individual right involved." If the right implicated is fundamental, we apply strict scrutiny. Strict scrutiny analysis requires us to determine "whether the government action infringing the fundamental right is narrowly tailored to serve a compelling government interest." If the right implicated is not fundamental, we only apply rational basis review. Rational basis analysis requires us to determine whether there is "a reasonable fit between the government interest and the means utilized to advance that interest."

*Russell*, 897 N.W.2d at 732 (internal citations omitted).

Asmussen was assessed a fine of $1000. A person "has a property interest in not being subject to irrational monetary fines." *City of Sioux City v. Jacobsma*,

862 N.W.2d 335, 345 (Iowa 2015). In this situation, a rational basis test may be applied. *See id.* Under the rational basis test, we "decide if there is a reasonable fit between the means used to advance the government interest and the interest itself." *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 86 (Iowa 2022). "Statutes are presumed constitutional, and we will not declare something unconstitutional under the rational basis test unless it 'clearly, palpably, and without doubt infringe[s]' a constitutional right." *Id.* (alteration in original) (citation omitted). "A court needs only to find a 'realistically conceivable' basis for the statute toward a legitimate government interest.'" *Id.* (citation omitted).

In *Allen v. Kentucky Horse Racing Authority*, a trainer raised a claim much like that raised by Asmussen. *See* 136 S.W.3d 54, 61 (Ky. Ct. App. 2004). Carl Allen claimed the trainer responsibility rule in Kentucky[3] was unconstitutional because "horses may become contaminated from their environment, through no fault of the trainer or the owner, by touching surfaces, bedding, hay, and water that may have been in contact with a horse that had received" the prohibited substance. *Id.* The court found the trainer responsibility rule was not unconstitutional, noting it was a reasonable way to promote safety in horse racing. *Id.*

And in *Casse v. New York State Racing & Wagering Board*, the Court of Appeals of New York addressed whether application of that state's trainer responsibility rule violated a trainer's due process rights. 517 N.E.2d 1309, 1309 (N.Y. 1987). The New York trainer responsibility rule provided "the trainer of a

---

[3] Under the Kentucky trainer responsibility rule, "the trainer bears primary responsibility for the condition of all horses trained by him to ensure that no horse will race with prohibited drugs or medication." *Deaton v. Ky. Horse Racing Auth.*, 172 S.W.3d 803, 805 (Ky. Ct. App. 2004).

thoroughbred race horse [was] liable for the impermissible presence of a restricted substance in the horse's system unless the trainer [could] show by substantial evidence that he was, in fact, neither personally nor vicariously responsible." *Id.* The court concluded:

> The stringent standard of responsibility imposed by this State's trainer responsibility rule, with its provision for the opportunity of the trainer to rebut his culpability, strikes a fair balance between the harshness of an *absolute* liability rule, on the one hand, and the considerable difficulty of proving the trainer's personal culpability, on the other. As a measure reasonably calculated to protect the public and competitors from tainted horse racing, and the horses from injury, while at the same time avoiding the considerably more onerous burden of absolute responsibility on the trainer, the rule satisfies the requirements of due process of law under both the Federal and State Constitutions.

*Id.* at 1312–13.

As noted, "[a] substantive due process violation is not easy to prove." *Lennette v. State*, 975 N.W.2d 380, 394 (Iowa 2022). The imposition of a fine to the trainer of a horse that has tested positive for the presence of a prohibited substance immediately after a race does not "shock the conscience." *See Save Our Stadiums v. Des Moines Indep. Cmty. Sch. Dist.*, 982 N.W.2d 139, 150 (Iowa 2022). There is also a rational basis for the trainer responsibility rule, as it acts "to ensure the integrity of racing, and to instill confidence in the betting public." We conclude Asmussen has not shown his substantive due process rights were violated.

## IV.  Imposition of Penalty

Asmussen contends the IRGC did not properly interpret its own rules when it imposed a penalty.[4]  Rule 491-10.7(1) provides:

> (a) No horse, while participating in a race, shall carry in its body any medication, drug, foreign substance, or metabolic derivative thereof, which is a narcotic or which could serve as a local anesthetic or tranquilizer or which could stimulate or depress the circulatory, respiratory, or central nervous system of a horse, thereby affecting its speed.
> . . . .
> (c) Proof of detection by the commission chemist of the presence of a medication, drug, foreign substance, or metabolic derivative thereof, prohibited by paragraph 10.7(1)(a) or (b), in a saliva, urine, blood, or hair sample duly taken under the supervision of the commission veterinarian from a horse immediately prior to or promptly after running in a race shall be prima facie evidence that the horse was *administered*, with the intent that it would carry or that it did carry in its body while running in a race, a prohibited medication, drug, or foreign substance in violation of this rule.
> . . . .
> (f) The owner, trainer, groom, or any other person having charge, custody, or care of the horse is obligated to protect the horse properly and guard it against the *administration or attempted administration* of a substance in violation of this rule.  If the stewards find that any person has failed to show proper protection and guarding of the horse, or if the stewards find that any owner, lessee, or trainer is guilty of negligence, they shall impose discipline and take other action they deem proper under any of the rules including referral to the commission.

(Emphasis added).

Asmussen asserts that the rules require proof a prohibited substance was administered to a horse.  He states that under rule 491-10.7(1)(c) the proof of

---

[4] Asmussen also claims the IRGC regulations do not follow the enabling legislation in Iowa Code section 99D.25 and the regulations are thus entitled to no deference. He did not raise this issue before the IRGC or the district court.  We conclude this issue has not been preserved for our review and we do not address it.  *See Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

administration may be based on a presumption because of the presence of the substance in the horse, but the presumption may be rebutted by evidence the substance was not administered to the horse. Asmussen contends that he rebutted the presumption of administration because the Board of Stewards specifically found, "[I]t was an inadvertent exposure, and not a deliberate administration." Asmussen claims that because he rebutted the presumption of administration of the prohibited substance, he should not have been penalized.

The ALJ rejected Asmussen's argument, stating

> Properly understood under the prima facie scheme embodied in this rule, the violation may be rebutted, for example, by evidence that the drug test was unreliable, or flawed, or had some other shortcoming. In other words, the burden-shifting scheme is not rebutted by a showing that the trainer did not affirmatively administer the drug or that there was no intentional act that led to the positive test. Rather, it may be rebutted by evidence of an unreliable or erroneous test. As the rule makes clear, the trainer is strictly responsible for the "condition of the horse" and "any prohibited drug . . . regardless of the acts of third parties."

The ALJ then found Asmussen presented no evidence to show the test was unreliable and thus had not rebutted the presumption the horse had raced with a prohibited substance in its system. This analysis was affirmed by the IRGC.

"[L]egal systems can assign economic losses without fault to achieve deterrence goals." *Wiezberg*, 923 N.W.2d at 217. The goals for the IRGC rules are set out by the legislature in section 99D.25(2):

> The general assembly finds that the practice of drugging or numbing a horse or dog prior to a race:
> a. Corrupts the integrity of the sport of racing and promotes criminal fraud in the sport;
> b. Misleads the wagering public and those desiring to purchase a horse or dog as to the condition and ability of the horse or dog;

c. Poses an unreasonable risk of serious injury or death to the rider of a horse and to the riders of other horses competing in the same race; and

d. Is cruel and inhumane to the horse or dog so drugged or numbed.

The district court held,

These findings evidence an intent to prohibit the presence of prohibited substances in a horse's system during a race and do not demonstrate any particular concern for *how* the substance gets into the horse's system. "It is obvious that the legislature meant to prohibit the placing of any drug or other like substance into the body of a [horse,] where it is not normally found, in order to affect the outcome of a race." [*State v.*] *Brumage,* 435 N.W.2d [337,] 343 [(Iowa 1989)].

We affirm the district court's conclusion that the IRGC's interpretation of its rules was not "[t]he product of reasoning that is so illogical as to render it wholly irrational" or "inconsistent with a rule of the agency." *See* Iowa Code § 17A.19(10)(g), (i). The IRGC could properly determine Asmussen was responsible for the presence of atenolol in Shang's system although there was no evidence Asmussen administered the substance to the horse.

## V.      Sufficiency of the Evidence

Asmussen claims the IRGC's findings are not supported by substantial evidence. He contends the rules require a finding that a prohibited substance affected a horse's speed. He states no evidence shows the low level of atenolol found in Shang affected the horse's speed. He also states that the IRGC did not show that atenolol was a prohibited substance.

The legislature has prohibited:

The drugging or numbing of a horse or dog with knowledge or with reason to believe that the horse or dog will compete in a race while so drugged or numbed. However, the commission may by rule

establish permissible trace levels of substances foreign to the natural
horse or dog that the commission determines to be innocuous.

Iowa Code § 99D.25(3)(b).  Rule 491-10.7(1)(a) prohibits a horse from carrying in its body while participating in a race a prohibited substance "which could stimulate or depress the circulatory, respiratory, or central nervous system of a horse, thereby *affecting its speed*."  (Emphasis added).

Asmussen argues the rules only seek to regulate substances that could affect a horse's speed.  *See* Iowa Admin. Code r. 491-10.7(1)(a).  He also notes that the legislature has recognized that trace levels of some substances may be innocuous.  *See* Iowa Code § 99D.25(3)(b).

Section 99D.23(1) provides the IRGC "may adopt by reference nationally recognized standards as determined by the [IRGC] or may adopt any other procedure or standard."  The Board of Stewards noted the ARCI Drug Testing Standards and Practices Program Model Rules Guidelines classifies atenolol as a Class 3, Penalty B drug.  The Board reviewed the recommended penalties for the presence of atenolol in a horse.  The ALJ also stated, "Iowa follows guidelines promulgated by [ARCI], which publishes the Drug Testing Standards and Practices Program Model Rules Guidelines.  These Guidelines classify Atenolol as a Class 3, Penalty B drug."  The IRGC properly relied on nationally recognized standards that list atenolol as a prohibited substance.

The Board also found, "There is no acceptable level for Atenolol in any sample, as there is no screening limit."  While the IRGC "may by rule establish permissible trace levels of substances foreign to the natural horse or dog that the commission determines to be innocuous," the IRGC rules have not established a

permissible or innocuous level for atenolol. *See* Iowa Code § 99D.25(3)(b); Iowa Admin. Code r. 491-10.7(1)(k) (listing a permissible level for some substances). The IRGC could properly determine that any level of atenolol in a horse's system is not permissible.

Furthermore, as the district court pointed out, "rule 10.7(a)(1) does not state that a violation requires a finding that a prohibited substance present in the horse's system *actually did* affect the horse's speed, but rather merely provides that a horse cannot 'carry in its body' any of the prohibited substances that *could* affect a horse's speed." The IRGC was not required to show that the level of atenolol in Shang's system affected the horse's speed. Therefore, Asmussen's contentions concerning whether this proposition is supported by substantial evidence are unavailing.

We affirm the decision of the district court that affirmed the IRGC imposing a fine for the presence of a prohibited substance in a horse.

**AFFIRMED.**